JOANN CLEMENTS *v.* LORETTA JONES
(AC 21263)

Schaller, Spear and Hennessy, Js.

Argued March 22—officially released August 20, 2002

*James A. Trowbridge,* for the appellant (defendant).

*Joann Clements,* pro se, the appellee (plaintiff).

SCHALLER, J. The defendant, Loretta Jones, the mother of a minor child, Devon, appeals from the judgment of the trial court awarding visitation to the plaintiff, Joann Clements, the paternal grandmother, pursuant to General Statutes § 46b-59. The defendant claims on appeal that the court improperly (1) violated her fourteenth amendment right to family privacy by requiring her to make her child available to the plaintiff and (2) applied § 46b-59 because the plaintiff otherwise had access to her grandchild. We reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The defendant and Allen Spears, the plaintiff's son, are the parents of the minor child, who was born on June 6, 1995. The defendant and Spears, who never married, separated after the birth of the child. The child has lived with and continues to reside with the defendant. The plaintiff has had regular contact with the child since birth, in the course of baby-sitting, overnight visits at her home, and driving the child to and from school.

On March 6, 1998, the plaintiff filed an application seeking visitation with the child. The plaintiff, and members of her family, also filed numerous complaints with the department of children and families, alleging that the defendant had neglected or abused the child. On April 27, 1998, Spears filed a petition for custody of the child. The plaintiff's application and the petition filed by Spears were consolidated, and the plaintiff and Spears were treated as coplaintiffs.[1] After a hearing, the court entered an order granting the plaintiff visitation rights on Wednesdays before and after school, subject to the

---

[1] Because Spears is not a party to the present appeal, we do not address his interests or rights with regard to the child.

defendant's vacation schedule and later modification. This appeal followed.

On appeal, the defendant asserts two claims. First, she claims that the court violated her fourteenth amendment right to family privacy by requiring her to make her child available to the plaintiff pursuant to § 46b-59. With regard to that claim, the defendant argues that § 46b-59 impermissibly infringes on her constitutional right to raise her child. Second, the defendant claims that the court improperly applied § 46b-59 because the plaintiff already had access to the child.

We conclude that the present appeal is controlled by *Roth* v. *Weston*, 259 Conn. 202, 789 A.2d 431 (2002). In accordance with *Roth*, we first address a jurisdictional issue that lies at the threshold of the present appeal. At the outset, we note our well settled standard of review for jurisdictional matters. "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Martinez* v. *Dept. of Public Safety*, 258 Conn. 680, 683, 784 A.2d 347 (2001).

In *Roth*, the defendant claimed that § 46b-59 violated the rights of parents to raise their children as protected by the due process clause of the fourteenth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut. *Roth* v. *Weston*, supra, 259 Conn. 209–10. Our Supreme Court noted that whether § 46b-59 is constitutional under the due process clause of the fourteenth amendment and article first, § 8, was an important issue of first impression.[2]

---

[2] We note that the *Roth* court limited its decision to the defendant's federal constitutional claim. *Roth* v. *Weston*, supra, 259 Conn. 210 n.6.

Id., 205. The *Roth* court went on to frame the issue in light of prior rulings by the United States Supreme Court and the Connecticut Supreme Court, noting that "[t]he dispositive issue on appeal is whether, in light of the United States Supreme Court decision in [*Troxel* v. *Granville,* 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000)], § 46b-59, as interpreted by this court in *Castagno* v. *Wholean,* 239 Conn. 336, 339–52, 684 A.2d 1181 (1996), is unconstitutional, either facially or as applied in this case." *Roth* v. *Weston,* supra, 209.

Applying a strict scrutiny analysis to § 46b-59; see id., 218; the *Roth* court stated that "[o]rdinarily, [i]f literal construction of a statute raises serious constitutional questions, we are obligated to search for a construction that will accomplish the legislature's purpose without risking the statute's invalidity. . . . That adjudicative technique, however, presumes that an alternative, constitutional interpretation remains available. As interpreted by *Castagno,* the statute currently requires no more than the fact that the family had been disrupted. Without proper gloss, the statute would be subject to application in a manner that would be unconstitutional.

"We have the option simply to invalidate the statute. That course, however, would leave adrift the significant interests of the *children* harmed by the loss of visitation with a loved one, and would cause significant uncertainty concerning the rights of, and the limitations upon those persons seeking visitation. Moreover, such a decision would entail significant questions concerning the effect of the invalidation of § 46b-59 upon related provisions of [General Statutes] §§ 46b-56 and 46b-57. . . . We therefore delineate a scheme consistent with the aforestated principles that will allow the statute to continue to function within the bounds of the constitution." (Citations omitted; emphasis in original; internal quota-

tion marks omitted.) *Roth* v. *Weston,* supra, 259 Conn. 233.

"Implicit in the statute is . . . a rebuttable presumption that visitation that is opposed by a fit parent is not in a child's best interest. In sum, therefore, we conclude that there are two requirements that must be satisfied in order for a court: (1) to have jurisdiction over a petition for visitation contrary to the wishes of a fit parent; and (2) to grant such a petition.

"First, the petition must contain specific, good faith allegations that the petitioner has a relationship with the child that is similar in nature to a parent-child relationship. The petition must also contain specific, good faith allegations that denial of the visitation will cause real and significant harm to the child. As we have stated, that degree of harm requires more than a determination that visitation would be in the child's best interest. It must be a degree of harm analogous to the kind of harm contemplated by [General Statutes] §§ 46b-120 and 46b-129, namely, that the child is neglected, uncared-for or dependent. The degree of specificity of the allegations must be sufficient to justify requiring the fit parent to subject his or her parental judgment to unwanted litigation. Only if these specific, good faith allegations are made will a court have jurisdiction over the petition.

"Second, once these high jurisdictional hurdles have been overcome, the petitioner must prove these allegations by clear and convincing evidence. Only if that enhanced burden of persuasion has been met may the court enter an order of visitation. These requirements thus serve as the constitutionally mandated safeguards against unwarranted intrusions into a parent's authority." (Internal quotation marks omitted.) *Roth* v. *Weston,* supra, 259 Conn. 234–35.

With regard to the harm prong of the jurisdictional test, we note that earlier in the *Roth* opinion, the Supreme Court delineated more specifically the types

of harm that it referred to in the summation of the jurisdictional test. Particularly, the *Roth* court stated that "it is unquestionable that in the face of allegations that parents are unfit, the state may intrude upon a family's integrity. . . . Therefore, it is clear that a requirement of an allegation such as abuse, neglect or abandonment would provide proper safeguards to prevent families from defending against unwarranted intrusions and would be tailored narrowly to protect the interest at stake." (Citations omitted.) Id., 224. Additionally, the *Roth* court also noted that "[a] more difficult issue is whether the child's own complementary interest in preserving relationships that serve his or her welfare and protection can also constitute a compelling interest that warrants intruding upon the fundamental rights of parents to rear their children. . . . Specifically, we consider whether something *less than* an allegation and proof in support of abuse, neglect or abandonment will suffice to permit an intrusion." (Citations omitted; emphasis in original.) Id., 225.

In answering that question, the court stated that "the only level of emotional harm that could justify court intervention is one that is akin to the level of harm that would allow the state to assume custody under General Statutes §§ 46b-120 and 46b-129—namely, that the child is 'neglected, uncared-for or dependent' as those terms have been defined. We are persuaded, therefore, that an allegation, along with proof thereof, that the parent's decision regarding visitation will cause the child to suffer real and substantial emotional harm likewise presents a compelling state interest that will permit interference with parental rights . . . ." *Roth* v. *Weston*, supra, 259 Conn. 226. Thus, when read as a whole, the harm prong in *Roth* allows for allegations of both physical and emotional harm.

With the *Roth* test before us, we normally would apply it to the present appeal and reach a conclusion as to the trial court's jurisdiction. In the present case, as in *Roth* itself, however, we cannot do so because "[t]hat approach . . . would be manifestly unfair, because these requirements are newly stated, and the [plaintiff] could not have anticipated their adoption." Id., 235. As a result, we will follow the approach taken by the *Roth* court in this situation and "examine . . . not only the allegations, but also the proof adduced by the [plaintiff] to determine whether, if either is insufficient, our remand should give the [plaintiff] an opportunity to amend [the] petition. In other words, if the record were to contain evidence that could support our newly stated requirement of proof, we would be inclined, rather than direct the trial court to dismiss the petition outright, to permit the [plaintiff] to amend the petition so that it might satisfy those requirements on a new trial." Id., 235–36.

We now turn to the plaintiff's allegations and the proof in the present case to determine, under the *Roth* test, whether either is sufficient to require our remand to allow the plaintiff to amend the application brought under § 46b-59. We conclude that the plaintiff's allegations are insufficient to invoke the trial court's jurisdiction, and that the evidence cannot satisfy the high clear and convincing standard.

We begin with the requirement that the plaintiff establish that she has a parent-like relationship with the child. A review of the allegations in the plaintiff's application reveal that the plaintiff has failed to allege a relationship of that sort. Specifically, the only references to the type of relationship that the plaintiff has with the child allege that she "has maintained a very close relationship with the Minor Child," has "spent much time . . . bonding with him," and that she and the child "are very close emotionally." Those assertions cannot be construed to

allege that the plaintiff has a parent-like relationship with the child.

The proof in this case, as illuminated by the court's memorandum of decision, also does not allow us to conclude that there is clear and convincing evidence that the plaintiff has a parent-like relationship with the child. Particularly, the court found that "[i]t was the conclusion of the family relations counselor that the plaintiff grandmother . . . [was a] very important [person] to the minor child . . . ." The court also stated that "[t]he paternal grandmother has had close contact with the minor child since his birth; with the child spending considerable time, including overnights, at her home." Those determinations do not allow us to conclude, by the high evidentiary standard set forth in *Roth*, that the plaintiff proved that she maintained a parent-like relationship with the child. To the contrary, the facts in the present case are very similar to those in *Roth*, in which our Supreme Court stated that "[a]lthough these facts reflect that the plaintiffs were involved in an ongoing relationship with the children, we conclude that they fail to establish the type of relationship we have articulated herein. The plaintiffs have not shown that they have acted in a parental type of capacity to the children as required under § 46b-59." Id., 236–37.

With regard to the second jurisdictional factor, the harm requirement, the plaintiff does not allege that a denial of visitation would result in harm to the child. Rather, the aspects of the application that can be construed as relating to harm state that the plaintiff often received the child in an ill state, apparently due to the child's asthma, and needed to nurse him back to health, that the plaintiff spent much time nursing the child back to health, that separation would be unjust and inhumane to the child, and that visitation would be in the best interest of the child. With regard to the specific allega-

tions about the child's health and his asthma, we cannot conclude, without more, that those assertions constitute an allegation that rises to the level of abuse, neglect or abandonment contemplated by *Roth*. See id., 235. The other assertions also do not allege the requisite level of harm necessary to satisfy the harm test set out in *Roth*.

Similarly, the proof in this case, as found in the court's memorandum of decision, does not allow us to conclude that clear and convincing evidence exists that the denial of visitation would harm the child. Specifically, the court found only that it was the conclusion of the family relations counselor that to interfere with the child's relationship with either his mother, his father, the mother's husband or the grandmother "may cause" irreparable harm to the child. The fact that the court, adopting the counselor's conclusion, used the conditional language "may" and the fact that the statement applied to three other individuals in addition to the plaintiff leads us to conclude that clear and convincing evidence did not exist that harm would result to the child in this case if visitation was denied.

We conclude in the present case, as the Supreme Court did in *Roth*, that there is an "absence of the essential allegations and proof in support thereof, both of the nature of the relationship between the [plaintiff] and the defendant's minor [child] as well as the harm that the [child] would suffer were visitation denied . . . ." Id., 240. We further conclude that the court did not have jurisdiction over the application for visitation and, as a result, its decision cannot stand.

The judgment is reversed and the case is remanded with direction to render judgment dismissing the application.

In this opinion the other judges concurred.