RICHARD S. DENARDO, JR. *v.* JANET BERGAMO
(SC 17200)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued October 18, 2004—officially released January 18, 2005

*Robert S. Kolesnik, Jr.*, for the appellants (intervening plaintiffs).

*Michael K. Conway*, for the appellee (defendant).

502

BORDEN, J. The dispositive issue in this appeal[1] is whether grandparents, who were granted the right of visitation with respect to a minor child pursuant to General Statutes § 46b-59[2] prior to this court's decision in *Roth* v. *Weston*, 259 Conn. 202, 789 A.2d 431 (2002), must satisfy the jurisdictional and substantive requirements set forth in *Roth* when a custodial parent has moved to modify or terminate the visitation order. The intervening plaintiffs, Richard S. Denardo, Sr., and Patricia Denardo,[3] appeal from the judgment of the trial court granting the motion of the defendant, Janet Bergamo, to modify and terminate the plaintiffs' visitation rights with respect to the defendant's minor child. The plaintiffs claim that the trial court improperly shifted the burden of proof on the defendant's motion to modify and terminate the plaintiffs' visitation rights from the defendant to the plaintiffs, and, as a result, improperly applied *Roth* retrospectively. We affirm the judgment of the trial court.

[1] The intervening plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 46b-59 provides in relevant part: "The Superior Court may grant the right of visitation with respect to any minor child or children to any person, upon an application of such person. Such order shall be according to the court's best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable . . . . In making, modifying or terminating such an order, the court shall be guided by the best interest of the child . . . . Visitation rights granted in accordance with this section shall not be deemed to have created parental rights in the person or persons to whom such visitation rights are granted. The grant of such visitation rights shall not prevent any court of competent jurisdiction from thereafter acting upon the custody of such child . . . and any such court may include in its decree an order terminating such visitation rights."

[3] Richard S. Denardo, Jr., petitioned for custody and visitation rights with respect to his daughter, Courtney Denardo. His parents, Richard S. Denardo, Sr., and Patricia Denardo, intervened as plaintiffs pursuant to General Statutes §§ 46b-57 and 46b-59. Richard S. Denardo, Jr., is not involved in this appeal. Hereafter, we refer in this opinion to Richard S. Denardo, Sr., and Patricia Denardo as the plaintiffs.

After the plaintiffs were granted permission to intervene in their son's petition for custody and visitation with respect to his daughter, the trial court, *Leheny, J.*, granted the plaintiffs visitation rights with respect to the child pursuant to § 46b-59. Thereafter, relying on this court's subsequent decisions in *Roth* v. *Weston*, supra, 259 Conn. 202, and *Crockett* v. *Pastore*, 259 Conn. 240, 789 A.2d 453 (2002), and alleging that the plaintiffs had continued to interfere with her right to make decisions for her child, the defendant moved to modify and terminate the plaintiffs' visitation rights. The trial court, *Hon. R. Petroni*, judge trial referee, granted the defendant's motion and terminated the plaintiffs' visitation rights. This appeal followed.

The following facts and procedural history are undisputed for purposes of this appeal. The defendant and Richard S. Denardo, Jr., were living together as an unmarried couple when their daughter was born on April 20, 1994. Due to difficulties in their relationship, they ultimately separated in July, 1995. Despite this change in the relationship between the defendant and their son, the plaintiffs, who are the child's paternal grandparents, maintained a cordial relationship with the defendant and spent time with the child throughout the time period following the child's birth and until August, 1998.

In August, 1998, Richard S. Denardo, Jr., filed a petition for custody and visitation with respect to the child. Shortly thereafter, he and the defendant entered into a stipulated temporary agreement that established his visitation schedule along with the requirement that he not allow the plaintiffs unsupervised visitation with the child; this agreement did not prevent the plaintiffs from visiting with the child while her father was present. The plaintiffs subsequently filed a motion for third party

intervention pursuant to General Statutes §§ 46b-57[4] and 46b-59; see footnote 2 of this opinion; and a motion for visitation pendente lite. All parties then entered into a stipulated agreement granting the plaintiffs' motion for intervention and allowing the plaintiffs unsupervised visitation during the child's visitation with her father. The new agreement still prevented the plaintiffs from having unsupervised overnight visits with the child.

The child's parents eventually entered into a stipulation regarding a custody and parenting plan that granted sole custody of the child to the defendant and defined the parents' rights and responsibilities relative to visitation and support. On the same day that the parents entered into the stipulation, the trial court began a hearing on the plaintiffs' motion to modify their visitation, wherein the plaintiffs had requested that they be granted the following rights with respect to the child: (1) assistance with school activities or trips; (2) overnight visits; (3) visitation every Tuesday from 2:35 p.m. to 5 p.m. and every Friday from 2:35 p.m. to 8 p.m.; (4) one full week of visitation during the summer months; (5) visitation on five specific holiday weekends from Sunday at 12 p.m. to Monday at 6 p.m.; and (6) provide day care in the event that the child has the day off from school or camp and neither parent is available. The defendant opposed these requests.

In ruling on the plaintiffs' requests, the trial court, Leheny, J., acknowledged that, "pursuant to § 46b-59, the court must be guided by the best interests of the child according to its best judgment subject to such

---

[4] General Statutes § 46b-57 provides in relevant part: "In any controversy before the Superior Court as to the custody of minor children . . . if there is any minor child of either or both parties, the court . . . may allow any interested third party or parties to intervene upon motion. . . . In making any order under this section the court shall be guided by the best interests of the child . . . ."

conditions and limitations as it deems equitable." The trial court also recognized, however, that the United States Supreme Court recently had held in *Troxel* v. *Granville*, 530 U.S. 57, 68–69, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000), that "there is a presumption that fit parents act in the best interests of their children. . . . [H]istorically [the law's concept of the family] has recognized that natural bonds of affection lead parents to act in the best interests of their children. . . . Accordingly, so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the [s]tate to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children."[5] (Citation omitted; internal quotation marks omitted.)

The trial court found that "[t]he [plaintiffs had] not allege[d] that [the defendant was] an unfit parent . . . [and had] produced no evidence to rebut the presumption that [the defendant did] not act in the best interests of the child." Further, it found "that the [plaintiffs had] intruded upon the right of the [defendant] to make decisions for her child." Nevertheless, the trial court found "that it would be in the best interest of the minor child to visit with the [plaintiffs] during the summer," despite the defendant's objection to the plaintiffs being granted any visitation rights. Accordingly, it ordered that the plaintiffs be granted five days of visitation during the summer but denied the plaintiffs' remaining

[5] In *Troxel* v. *Granville*, supra, 530 U.S. 75, the United States Supreme Court held that § 26.10.160 (3) of the Revised Code of Washington, the nonparental visitation statute, which the Washington Supreme Court had held facially unconstitutional under the federal constitution, was unconstitutional as applied to the defendant mother because it "violated her due process right to make decisions concerning the care, custody, and control of her [children]." The Washington statute contained several similarities to § 46b-59, the most important being the "best interest of the child" standard to be used in ruling on nonparental visitation.

requests. At the time it made its ruling, the trial court's reliance on the best interest of the child standard was in accord with the judicial gloss that this court had applied to § 46b-59 in *Castagno* v. *Wholean*, 239 Conn. 336, 352, 684 A.2d 1181 (1996), which was decided before the Supreme Court's decision in *Troxel*.[6]

Following the trial court's order in the present case, this court had occasion in two concurrent cases, namely, *Roth* v. *Weston*, supra, 259 Conn. 202, and *Crockett* v. *Pastore*, supra, 259 Conn. 240, to assess the constitutionality of § 46b-59 in light of the decision of the Supreme Court in *Troxel*. In *Roth*, we held that a person seeking visitation rights pursuant to § 46b-59 must satisfy certain jurisdictional and substantive requirements for the statute to be constitutional as applied. See *Roth* v. *Weston*, supra, 222, 229 and 233. Specifically, we held that for a court to have jurisdiction over a petition for visitation pursuant to § 46b-59 contrary to the wishes of a fit parent, "the petition must contain specific, good faith allegations that the peti-

---

[6] In *Castagno* v. *Wholean*, supra, 239 Conn. 337, the plaintiff grandparents sought an order of visitation with the minor children of their daughter and her husband, who were not then separated or involved in any court proceedings that might affect the custody of the children. We recognized that, because the text of the statute did not contain any threshold requirement that the minor child's family life be disrupted in any way before a nonparent could seek visitation rights, "[t]he literal application of [§ 46b-59] to [that] case could place the statute in constitutional jeopardy." Id., 345. Therefore, consistent with our duty to construe statutes, whenever possible, to avoid constitutional infirmities; *State* v. *Floyd*, 217 Conn. 73, 88, 584 A.2d 1157 (1991); we "conclude[d] that the legislature intended § 46b-59 to afford the trial court jurisdiction to entertain a petition for visitation only when the minor child's family life [had] been disrupted in a manner analogous to the situations addressed by [General Statutes] §§ 46b-56 and 46b-57." *Castagno* v. *Wholean*, supra, 352. As detailed in *Castagno*, this judicial gloss was consistent with the common-law background against which the statute was enacted, its contextual interplay with other statutes, and its legislative history. Id., 340–52. The judicial gloss in *Castagno*, however, did not alter the statute's mandate that the trial court be guided by the best interests of the child.

tioner has a relationship with the child that is similar in nature to a parent-child relationship [and] . . . that denial of the visitation will cause real and significant harm to the child. . . . [T]hat degree of harm requires more than a determination that visitation would be in the child's best interest. It must be a degree of harm analogous to the kind of harm contemplated by [General Statutes] §§ 46b-120 and 46b-129, namely, that the child is 'neglected, uncared-for or dependent.' " Id., 234–35. We also held that once jurisdiction has been established, "the petitioner must prove these allegations by clear and convincing evidence." Id., 235. In *Crockett* v. *Pastore*, supra, 246, decided the same day as *Roth*, we reiterated the jurisdictional requirements for a trial court to consider a petition for visitation pursuant to § 46b-59 over the objections of a fit parent. Unlike the present case, neither *Roth* nor *Crockett* involved a pre-existing court order of visitation. Rather, in both of those cases, the nonparents sought to secure such an order over the objections of the minor child's fit parent.

On the basis of our decisions in *Roth* and *Crockett*, the defendant moved to modify and terminate the plaintiffs' visitation. The defendant alleged that the plaintiffs continued to intrude upon her right to make decisions for her child in that, for example, they had contacted a teacher about the child's academic progress, spoken to the child's music teacher about guitar lessons for the child, and taken the child out of the state during their five days of summer visitation. The trial court, *Hon. R. Petroni*, judge trial referee, initially modified the order of visitation to clarify that the plaintiffs were not to be involved in decisions for the child concerning educational, religious or medical issues without the defendant's written consent and were not allowed to remove the child from the state, but declined to terminate the plaintiffs' visitation rights.

The defendant then moved to reargue. The trial court granted the defendant's motion to reargue, and subsequently vacated its earlier order and terminated the plaintiffs' visitation. The trial court concluded that the standards set forth in *Roth* and *Crockett* were applicable to the defendant's motion to modify and terminate the plaintiffs' visitation, and that the plaintiffs had failed to allege or present evidence that the defendant was an unfit parent or that the denial of visitation would result in significant harm to the child.

The plaintiffs claim on appeal that the trial court improperly applied the *Roth* standards retrospectively by shifting the burden of proof on the defendant's motion for modification and termination from the defendant to the plaintiffs, and that the retrospective application of *Roth* violated the due process rights of the plaintiffs and the child.[7] They assert that the law applicable to modification cases compelled the trial court to place the burden on the defendant to establish a prima facie case of a material change in circumstances or that the existing visitation order was no longer in the best interests of the child *before* shifting the burden to the plaintiffs to meet the *Roth* requirements. The plaintiffs acknowledge that, pursuant to their proffered jurisprudential scheme, grandparents whose visitation

[7] We note that the plaintiffs lack standing to assert the due process rights of the minor child. See *Shaskan* v. *Waltham Industries Corp.*, 168 Conn. 43, 49, 357 A.2d 472 (1975) (litigant lacks standing to assert constitutional rights of another). "It is well established that a child may bring a civil action only by a guardian or next friend, whose responsibility it is to ensure that the interests of the ward are well represented. . . . When a guardian has been appointed to protect the interests of a child, the guardian is usually the proper person to bring an action on behalf of the child." (Citations omitted; internal quotation marks omitted.) *Orsi* v. *Senatore*, 230 Conn. 459, 466–67, 645 A.2d 986 (1994). Because the plaintiffs are not the legal guardians of the child, and the child's interests are represented by an attorney, the plaintiffs cannot assert the child's legal rights. Accordingly, we do not consider whether the child's due process rights were violated by the trial court's judgment.

with their grandchild is not supported by a pre-*Roth* court order would have to comply with the *Roth* requirements upon their petition to receive a court order of visitation contrary to the wishes of a fit parent; but grandparents—like the plaintiffs in the present case—whose visitation was pursuant to a pre-*Roth* court order would not have to comply with those requirements unless the parent could meet the initial burden of proof. The defendant contends that the trial court's retrospective application of *Roth* was proper, that, contrary to the plaintiffs' proffered scheme, *Roth* should apply equally irrespective of whether a grandparent moves to secure an initial order of visitation or a parent moves to modify such an order, and that the plaintiffs' failure to satisfy the *Roth* standards mandated a termination of the visitation order. We agree with the defendant.

"We start our analysis with the observation that [t]he courts of the states are free to determine the extent to which new decisions are to have retrospective effect." (Internal quotation marks omitted.) *State* v. *Salmon*, 250 Conn. 147, 165, 735 A.2d 333 (1999). That determination, regardless of its outcome, does not result automatically in the denial of due process or any other right protected by the federal constitution.[8] *Great Northern Railway Co.* v. *Sunburst Oil & Refining Co.*, 287 U.S. 358, 364–65, 53 S. Ct. 145, 77 L. Ed. 360 (1932). Thus, the retrospective application of *Roth* does not result, per se, in a violation of the plaintiffs' due process rights.

Although the federal constitution does not automatically preclude the retrospective application of *Roth*, we still must determine whether it *should* apply retrospec-

[8] The plaintiffs do not make clear whether their due process claim is brought pursuant to the state or the federal constitution. They have failed to provide any independent analysis of the claim pursuant to the state constitution. Accordingly, we limit our analysis to those guarantees provided in the federal constitution. See *State* v. *DeJesus*, 270 Conn. 826, 834 n.14, 856 A.2d 345 (2004).

tively. In making that determination, we are guided by our decision in *Neyland* v. *Board of Education,* 195 Conn. 174, 487 A.2d 181 (1985).

In *Neyland,* we reviewed the analytical framework developed by the United States Supreme Court to decide whether a federal judicial decision should receive prospective application only. Id., 179–81. We noted that, although that court had established a three factor test of general applicability in *Chevron Oil Co.* v. *Huson,* 404 U.S. 97, 106–107, 92 S. Ct. 349, 30 L. Ed. 2d 296 (1971); *Neyland* v. *Board of Education,* supra, 195 Conn. 179–80; it had outlined a different standard for subject matter jurisdictional rulings specifically in *Firestone Tire & Rubber Co.* v. *Risjord,* 449 U.S. 368, 379, 101 S. Ct. 669, 66 L. Ed. 2d 571 (1981), "concluding that [a] court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may never be made prospective only." (Internal quotation marks omitted.) *Neyland* v. *Board of Education,* supra, 181. On the basis of our analysis of the two approaches, we held that the *Chevron Oil Co.* test generally was inapplicable to jurisdictional rulings. Id., 182–83. We declined, however, to adhere strictly to the reasoning in *Firestone Tire & Rubber Co.* to the extent that it would require this court's subject matter jurisdictional rulings never being made prospective only, noting that the United States Supreme Court, itself, had elected to limit the holding in *Northern Pipeline Construction Co.* v. *Marathon Pipe Line Co.,* 458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982), to prospective application based on public policy considerations.[9] *Neyland* v. *Board of*

___

[9] In *Northern Pipeline Construction Co.* v. *Marathon Pipe Line Co.,* supra, 458 U.S. 87, the Supreme Court held that the broad grant of jurisdiction to the bankruptcy courts contained in 28 U.S.C. § 1471 (1976 Ed. Sup. IV) was unconstitutional. The court then applied the *Chevron Oil Co.* test to conclude that its decision would apply prospectively only because "[retrospective] application would not further the operation of [its] holding, and would surely visit substantial injustice and hardship upon those litigants who relied upon

*Education,* supra, 179–81. Instead, we indicated that we would consider whether "exceptional circumstances or overriding needs of public policy similar to those present in [*Northern Pipeline Construction Co.* exist] to merit a conclusion of [prospective only application]." *Neyland* v. *Board of Education,* supra, 182–83. Accordingly, because this court's decision in *Roth* established the threshold requirements for a trial court to acquire subject matter jurisdiction to entertain a petition for visitation pursuant to § 46b-59, it should be limited to prospective application only if exceptional circumstances or overriding needs of public policy exist that dictate such a conclusion.

We conclude that, not only do no such exceptional circumstances exist, but that the overriding needs of public policy weigh heavily in favor of a retrospective application of *Roth.* First and foremost, *Roth* is rooted in the fundamental right of parents to make childrearing decisions—a right protected by the due process clause of the fourteenth amendment. "[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." *Troxel* v. *Granville,* supra, 530 U.S. 65. "[A]mong those interests lying at the core of a parent's right to care for his or her own children is the right to control their associations." *Roth* v. *Weston,* supra, 259 Conn. 216. Although we sympathize with the plaintiffs' concerns about a "bitter" parent acting capriciously in a manner arguably not in the best interest of the child, "the due process clause leaves little room for states to override a parent's decision even when that parent's decision is arbitrary and neither serves nor is motivated by the best interests of the child." Id., 223. "In light of the compelling interest at stake, the best interests of the

the [Bankruptcy Act's] vesting of jurisdiction in the bankruptcy courts." Id., 88.

child are secondary to the parents' rights." Id. In *Roth* v. *Weston,* supra, 217, we acknowledged that the judicial gloss that we had applied to § 46b-59 in *Castagno* v. *Wholean,* supra, 239 Conn. 352, inadequately protected the fundamental rights to rear one's child and to family privacy. Limiting *Roth* to prospective application only would sanction violations of parents' constitutional rights prior to *Roth,* an action we decline to take.

In addition, the creation of two regimes divided temporally by *Roth* would be anomalous. On one side of that divide would be those grandparents who have informal, as opposed to court-ordered, visitation and who would be forced to meet the *Roth* standards to protect that visitation should the parent choose to terminate it unilaterally. On the other side would be those grandparents who exercise the same visitation in every respect except that it is court ordered and who would have a partial shield against the application of the *Roth* standards should the parent attempt to terminate the visitation. We see no persuasive reason to bifurcate the application of the *Roth* standards depending on whether the existing visitation scheme has been formalized by a previous court order.

Nevertheless, the plaintiffs urge this court to adopt an approach whereby a parent seeking to modify a visitation order granted prior to *Roth* pursuant to § 46b-59 would be required to establish a prima facie case of a change in circumstances or that the existing order was no longer in the best interests of the child before the burden was shifted to the grandparents to meet the standards in *Roth.* The plaintiffs claim that this approach would be consistent with the one that we articulated for relocation cases in *Ireland* v. *Ireland,* 246 Conn. 413, 428, 717 A.2d 676 (1998), whereby "a custodial parent seeking permission to relocate bears the initial burden of demonstrating, by a preponderance of the evidence, that (1) the relocation is for a legitimate

purpose, and (2) the proposed location is reasonable in light of that purpose. Once the custodial parent has made such a prima facie showing, the burden shifts to the noncustodial parent to prove, by a preponderance of the evidence, that the relocation would not be in the best interests of the child."

We disagree that a scheme similar to that devised in *Ireland* offers an appropriate approach to govern a fit parent's motion to modify an order of visitation for grandparents. First, we are not persuaded that a similar scheme is appropriate because the parties in the present case occupy different positions with respect to each other from those in a relocation case. When a custodial parent seeks to relocate with a child over the opposition of a noncustodial parent, the parties—both parents— enter into the conflict as equals, and accordingly, the shifting burden of proof scheme set forth in *Ireland* appropriately balances the fundamental rights of those equal parties. When a grandparent seeks to establish or maintain visitation rights with respect to a child over the opposition of that child's parent, however, the parent's rights necessarily carry greater weight "[b]ecause parenting remains a protected fundamental right . . . ." *Roth* v. *Weston*, supra, 259 Conn. 223. Hence, a balancing scheme predicated on the parties' equality of rights would be inappropriate.

Second, we acknowledge that, ordinarily, before a court may modify a preexisting postdecree order of visitation, the moving party must establish either a material change in circumstances altering the child's best interests or that the prior order was not based on the child's best interests. *Berglass* v. *Berglass*, 71 Conn. App. 771, 782, 804 A.2d 889 (2002). These requirements are based on the interest in finality of judgments; see *Hall* v. *Hall*, 186 Conn. 118, 122–23, 439 A.2d 447 (1982); and the family's need for stability. See *Sullivan* v. *Sullivan*, 141 Conn. 235, 239, 104 A.2d 898 (1954). Those

important interests, however, cannot trump the fit parent's constitutionally protected right to raise her child as she sees fit and the concomitant presumption that she acts in that child's best interest. Moreover, in a contested visitation case, the ultimate question is: What is in the child's best interest? General Statutes § 46b-56 (b) ("[i]n making or modifying any order with respect to custody or visitation, the court shall . . . be guided by the best interests of the child"); *Ireland* v. *Ireland*, supra, 246 Conn. 419 ("in deciding custody or visitation issues, a court must always be guided by what is in the best interests of the child"). Thus, where, as in the present case, a fit parent moves to terminate visitation, she is presumed to act in furtherance of that interest.

Our conclusion that *Roth* applies retrospectively leads to the further conclusion that the trial court was compelled to grant the defendant's motion to terminate visitation. The plaintiffs failed to allege or attempt to prove that their relationship with the child was similar to a parent-child relationship and that denial of visitation would cause real and significant harm to the child. Without those specific, good faith allegations or such proof, either at the time of the filing of their petition or at the time of the hearing on the defendant's motion, the trial court's prior order of visitation was rendered without subject matter jurisdiction. Accordingly, the defendant's motion to modify and terminate the plaintiffs' visitation rights properly was granted.

The judgment is affirmed.

In this opinion the other justices concurred.