## GERALDINE F. WARNER *v.* CARISA MARIE BICKNELL
### (AC 31300)

DiPentima, C. J., and Bear and Stoughton, Js.

Argued December 1, 2010—officially released February 15, 2011

*Michael D. Day*, for the appellant (defendant).

*Claudette J. Narcisco*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, C. J. "[A]lthough our statutory scheme does provide for visitation by third persons, the right of third parties to seek such visitation is limited by the rights of fit parents to raise their children free from

interference." *Carrier* v. *King*, 105 Conn. App. 391, 392, 939 A.2d 1, cert. denied, 286 Conn. 904, 943 A.2d 1101 (2008); see generally *Troxel* v. *Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). Because "[t]he family entity is the core foundation of modern civilization" and parents have a "constitutionally protected interest . . . to raise their children without interference"; *Roth* v. *Weston*, 259 Conn. 202, 228, 789 A.2d 431 (2002); our Supreme Court has set an "admittedly high hurdle" for a third party seeking visitation against the wishes of a fit parent. Id., 229. The defendant, Carisa Marie Bicknell, appeals from the judgment of the trial court granting an application for visitation with her minor child to the plaintiff, Geraldine F. Warner, the child's paternal grandmother, pursuant to General Statutes § 46b-59. The dispositive issue in this appeal is whether the plaintiff satisfied the two part test for standing established by our Supreme Court in *Roth* v. *Weston*, supra, 234–35. We conclude that the plaintiff failed to meet this test and lacked standing.[1] Accordingly, we reverse the judgment of the trial court.

The following factual and procedural history is relevant to the resolution of the defendant's appeal. On January 18, 2008, the plaintiff filed an application for visitation with the minor child.[2] On this form, the plaintiff indicated that Connecticut was the home state of the child, the child had lived in Connecticut for the past six months, the child and at least one parent had a significant connection to Connecticut, and no other state had an interest in the case and that it was in the best interest of the child for a Connecticut court to hear the case. The plaintiff did not claim that she had a relationship with the child that is similar in nature to

---

[1] As a result, we need not reach the other issues raised by the defendant in her appeal.

[2] A state marshal served the defendant with a copy of the application for visitation on February 4, 2008.

a parent-child relationship and that a denial of visitation would cause real and significant harm to the child. On the same date, the plaintiff filed a motion for an order of visitation, pendente lite.

On February 28, 2008, the parties entered into a temporary agreement under which the plaintiff was entitled to a telephone call with the child on weeknights and permitted to send the child letters and cards. Further, the parties agreed to apply for supervised visits through the Southern Connecticut State University Family Clinic program (program). The parties also agreed to return to court with a report from the program. In May, 2008, the court ordered a continuation of supervised visits.

On December 1, 2008, the parties entered into a second agreement, under which the plaintiff would have two supervised visits per month through the program. The defendant was responsible for the cost of the program. The court approved this agreement. On December 21, 2008, the parties appeared at a hearing before the court. After a preliminary discussion, the court suggested that further details of an agreement might be worked out with the family relations division of the Superior Court. After finalizing the details, the agreement was made an order of the court. The court did not schedule a further hearing but, instead, indicated that the parties would not need to return to court unless an issue arose.[3]

---

[3] The following discussion occurred:

"[The Plaintiff's Counsel]: Could we have a follow-up date maybe three or four months from now?

"The Court: All right.

"[The Defendant]: Do we have to come back?

"The Court: Why don't we just leave it that if there's a problem instead of just having somebody have to take the time off from work—

"[The Defendant]: No, just leave it, yes. Thank you.

"The Court: If there's no problem we don't need to come back, but if your client doesn't think that she's getting the two a month [visits] as provided for in the agreement then you can have a motion and set it down. Okay.

"[The Plaintiff's Counsel]: Okay. Very good."

On April 3, 2009, the plaintiff and her counsel appeared before the court for the purpose of obtaining unsupervised visitation. The defendant was not present at this proceeding. The court scheduled the matter for a hearing. On April 7, 2009, notice was sent to the parties and the plaintiff's attorney for a May 11, 2009 hearing. At the hearing, after discussion off the record, the court indicated that at the status conference on April 3, 2009, the hearing was scheduled for May 11, 2009. The court then proceeded to hear testimony from the plaintiff.

After the hearing, the court issued a memorandum of decision, in which it found that the defendant had received notice of the hearing and awarded the plaintiff unsupervised visitation with the child.[4] In addition, the plaintiff received weekly overnight visits during the summer and, during the school year, weekly visits with overnight visits two weekends per month. The court also ordered that the child's father was not permitted to be present during the visits without the express agreement of the mother. Finally, the plaintiff's counsel was instructed to serve the defendant with the court's orders.

On May 18, 2009, the defendant filed a motion for modification of the court's orders. The defendant alleged that she did not receive notice of the May 11, 2009 hearing and requested that the plaintiff's visitation be terminated. On May 27, 2009, the defendant, now represented by counsel, filed a motion to reconsider and reargue pursuant to Practice Book § 11-11. She again alleged that she had not received notice regarding the May 11, 2009 proceeding. The court denied the defendant's motion on June 2, 2009. On June 19, 2009, the defendant filed a motion for reconsideration of the court's June 2, 2009 order. The court also denied this motion. This appeal followed.

[4] The unsupervised visitation was to begin at the conclusion of the school year.

On appeal, the defendant claims that the plaintiff failed to satisfy the two part test for standing established by our Supreme Court in *Roth* v. *Weston*, supra, 259 Conn. 202. We begin, therefore, with a discussion of our jurisprudence relating to visitation with minor children by third parties contrary to the wishes of a fit parent.

In *Roth*, the plaintiffs, the maternal aunt and grandmother, sought visitation with the minor children of the defendant father. Id., 204. The father had prevented the aunt and grandmother from visitation with the children following the suicide of the children's mother. Id., 206. The trial court granted the plaintiffs' applications for visitation and the defendant appealed. Id., 209.

Our Supreme Court examined "the jurisdictional prerequisite of standing, that is, which persons may intrude upon a parent's autonomy. Standing is . . . a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury [that the complainant] has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause." (Citation omitted; internal quotation marks omitted.) Id., 218–19. Due to the fundamental right implicated in such cases, this standing requirement is narrowly drawn. Id., 219.

Our Supreme Court then set forth the specifics of this safeguard. "In sum, therefore, we conclude that

there are two requirements that must be satisfied in order for a court: (1) to have jurisdiction over a petition for visitation contrary to the wishes of a fit parent; and (2) to grant such a petition. First, the petition must contain specific, good faith allegations that the petitioner has a relationship with the child that is similar in nature to a parent-child relationship. The petition must also contain specific, good faith allegations that denial of the visitation will cause real and significant harm to the child. As we have stated, that degree of harm requires more than a determination that visitation would be in the child's best interest. It must be a degree of harm analogous to the kind of harm contemplated by [General Statutes] §§ 46b-120 and 46b-129, namely, that the child is 'neglected, uncared-for or dependent.' The degree of specificity of the allegations must be sufficient to justify requiring the fit parent to subject his or her parental judgment to unwanted litigation. *Only if these specific, good faith allegations are made will a court have jurisdiction over the petition.*

"Second, once these high jurisdictional hurdles have been overcome, the petitioner must prove these allegations by clear and convincing evidence. Only if that enhanced burden of persuasion has been met may the court enter an order of visitation. These requirements thus serve as the constitutionally mandated safeguards against unwarranted intrusions into a parent's authority." (Emphasis added.) Id., 234–35.

Our case law is clear that, absent the allegations identified by the *Roth* court, the court must dismiss a third party's application for visitation. Id., 240; see also *Denardo* v. *Bergamo*, 272 Conn. 500, 514, 863 A.2d 686 (2005); *Crockett* v. *Pastore*, 259 Conn. 240, 250, 789 A.2d 453 (2002); *Fennelly* v. *Norton*, 103 Conn. App. 125, 142, 931 A.2d 269 ("[i]f the application [for visitation] does not contain such allegations, the court lacks subject

matter jurisdiction and the application must be dismissed"), cert. denied, 284 Conn. 918, 931 A.2d 936 (2007); *Clements* v. *Jones*, 71 Conn. App. 688, 696, 803 A.2d 378 (2002).

We therefore must examine the record to determine whether the application contained specific, good faith allegations that the plaintiff had a relationship with the child similar in nature to a parent-child relationship and that it contained specific, good faith allegations that the denial of visitation would cause real and significant harm to the child. See *Fennelly* v. *Norton*, supra, 103 Conn. App. 131–32. A determination regarding a trial court's subject matter jurisdiction is a question of law and, therefore, we employ the plenary standard of review and decide whether the court's conclusions are legally and logically correct and supported by the facts in the record. *Clements* v. *Jones*, supra, 71 Conn. App. 690. "[I]t is well established that a reviewing court properly may address jurisdictional claims that neither were raised nor ruled on in the trial court. Indeed, [o]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented. . . . The court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Bialobrzeski*, 123 Conn. App. 791, 798, 3 A.3d 183 (2010). Finally, we note that "[i]t is hornbook law that the parties cannot confer subject matter jurisdiction on a court by consent, waiver, silence or agreement." *Hayes* v. *Beresford*, 184 Conn. 558, 562, 440 A.2d 224 (1981); see also *Bender* v. *Bender*, 292 Conn. 696, 704 n.5, 975 A.2d 636 (2009).

In her application for visitation, the plaintiff did not allege that she had a parent-like relationship with the child and that the denial of visitation would cause real and significant harm to the child. Additionally, there is nothing in the record containing specific, good faith

allegations that the plaintiff had a parent-like relationship with the minor child similar in nature to a parent-child relationship, and that the denial of visitation would cause real and significant harm to the child. The defendant's objection to visitation by the plaintiff was manifest in the May 18, 2009 motion for modification in which she expressly stated, "I would like to terminate visitation with [the plaintiff]."

The plaintiff argues that the defendant had consented to visitation, as demonstrated by the visitation agreements. She further maintains that she was not required to satisfy the *Roth* pleading requirements. This argument overlooks our Supreme Court's decision in *Denardo* v. *Bergamo*, supra, 272 Conn. 500. In that case, the intervening grandparents were awarded visitation prior to the *Roth* decision. Id., 503. The defendant parent, subsequent to the release of *Roth*, moved to modify and to terminate visitation. Id. The trial court granted the parent's application and the grandparents appealed.[5] Id.

Our Supreme Court agreed with the parent's arguments that (1) *Roth* applied retroactively and (2) "*Roth should apply equally irrespective of whether a grandparent moves to secure an initial order of visitation or a parent moves to modify such an order*, and that the [grandparents'] failure to satisfy the *Roth* standards mandated a termination of the visitation order." (Emphasis added.) Id., 509. "Our conclusion that *Roth* applies retrospectively leads to the further conclusion that the trial court was compelled to grant the [parent's] motion to terminate visitation. The [grandparents]

---

[5] "The trial court concluded that the standards set forth in *Roth* . . . were applicable to the [parent's] motion to modify and terminate the [grandparents'] visitation, and that the [grandparents] had failed to allege or present evidence that the [parent] was . . . unfit . . . or that the denial of visitation would result in significant harm to the child." *Denardo* v. *Bergamo*, supra, 272 Conn. 508.

failed to allege or attempt to prove that their relationship with the child was similar to a parent-child relationship and that denial of visitation would cause real and significant harm to the child. Without those specific, good faith allegations or such proof, either at the time of the filing of their petition or at the time of the hearing on the defendant's motion, the trial court's prior order of visitation was rendered without subject matter jurisdiction. Accordingly, the [parent's] motion to modify and terminate the [grandparents'] visitation rights properly was granted." Id., 514.

We further note that our jurisprudence regarding subject matter jurisdiction is contrary to the plaintiff's argument. "[A] court lacks discretion to consider the merits of a case [or claim] over which it is without jurisdiction . . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings." (Internal quotation marks omitted.) *Zoll* v. *Zoll,* 112 Conn. App. 290, 297, 962 A.2d 871 (2009); see also *In re DeLeon J.,* 290 Conn. 371, 376, 963 A.2d 53 (2009) (well established that reviewing court properly may address jurisdictional claims that neither were raised nor ruled on by trial court and that once question of jurisdiction raised, it must be resolved before proceeding further); *Fennelly* v. *Norton,* supra, 103 Conn. App. 136–37 (once issue of subject matter jurisdiction raised, it must be resolved before addressing merits of case); *Rathblott* v. *Rathblott,* 79 Conn. App. 812, 816–17, 832 A.2d 90 (2003) (parties cannot create subject matter jurisdiction through consent or waiver).

We conclude, on the basis of precedent from our Supreme Court and the relevant case law on subject matter jurisdiction, that the plaintiff was not relieved

of the requirements of *Roth* simply because there previously had been an agreement regarding visitation. In the absence of specific, good faith allegations that the plaintiff had a parent-like relationship with the child and that the denial of visitation would cause real and significant harm to the child, the court lacked jurisdiction to consider the plaintiff's application for visitation.

The judgment is reversed and the case is remanded with direction to render judgment dismissing the plaintiff's application for visitation for lack of subject matter jurisdiction.

In this opinion the other judges concurred.