******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

CRAIG B. HUNTER ET AL. *v.* SATYAM S.
SHRESTHA
(AC 41751)

Alvord, Moll and Beach, Js.

*Syllabus*

The plaintiffs appealed to this court from the judgment of the trial court
dismissing for lack of subject matter jurisdiction their third-party petition
for visitation as to the minor child of the defendant. In dismissing the
petition, the trial court determined that the plaintiffs failed to set forth
the specific, good faith allegations required to satisfy the jurisdictional
pleading requirements set forth in *Roth* v. *Weston* (259 Conn. 202),
specifically, that the plaintiffs have a parent-like relationship with the
child and that the denial of visitation will cause real and significant
harm to the child. *Held* that the trial court properly dismissed the plain-
tiffs' petition for lack of subject matter jurisdiction, the plaintiffs having
failed to plead the requisite level of harm under the second element of
*Roth*; although the plaintiffs alleged that the denial of visitation would
cut the child off from the maternal side of her family, have the effect
of the child feeling that the plaintiffs abandoned her, compound the
child's early childhood trauma and harm her, the plaintiffs did not allege
with sufficient specificity how the child would be harmed, and, without
more, those allegations did not rise to the level of abuse, neglect or
abandonment contemplated by *Roth*.

Argued October 8, 2019—officially released January 21, 2020

*Procedural History*

Petition for visitation with the defendant's minor
child, brought to the Superior Court in the judicial dis-
trict of Hartford, where the court, *Prestley, J.*, denied
the defendant's motion to dismiss; thereafter, the court
granted the defendant's motion for reconsideration and
rendered judgment dismissing the petition, from which
the plaintiffs appealed to this court. *Affirmed.*

*Barbara J. Ruhe*, for the appellants (plaintiffs).

*Tanya T. Dorman*, for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiffs, Craig B. Hunter and Sarah Megan Berthold, appeal from the judgment of the trial court dismissing their third-party petition for visitation pursuant to General Statutes § 46b-59[1] and Practice Book § 25-4[2] as to the minor child of the defendant, Satyam S. Shrestha. Because we conclude that the plaintiffs' petition failed to satisfy the jurisdictional pleading requirements set forth in *Roth* v. *Weston*, 259 Conn. 202, 789 A.2d 431 (2002), we affirm the judgment of the trial court.

The following facts and procedural history are necessary to our resolution of the plaintiffs' appeal. On January 26, 2017, the then self-represented plaintiffs[3] filed a third-party petition seeking visitation with the defendant's child.[4] The plaintiffs checked the box on the petition stating that they "have a relationship with the child(ren) that is parent-like."[5] The plaintiffs alleged that they had been the child's "primary caregivers for three years prior to July 15, 2016," and that for the first one and one-half years of that time, the child lived with the plaintiffs seven days per week, and for the remainder of that time, the child lived with the plaintiffs five days per week. The plaintiffs checked the box stating that "[d]enial of visitation will cause real and significant harm to the child(ren)." The plaintiffs alleged that "[i]t would cut [the child] off from all ties with her maternal side of the family. [The child's] mother abandoned her when she was [one year old] and we have been consistent and parent-like caregivers in her life ever since. Denying visitation will have the effect of [the child] feeling that we have abandoned her and compound her early childhood trauma [and] harm her." The plaintiffs also added, "see attached [s]upplements."

In the attached supplement, the plaintiffs alleged that prior to the child's birth, they "provided extensive financial and emotional support" to the child's parents. The plaintiffs alleged that they were present from the time of the child's birth and infancy and "provided her with parent-like care." The plaintiffs alleged that they "have had a continuous parent-like relationship with [the child] on both coasts of the United States throughout her life" and that "[s]he began to live with [them] several days a week before she first attended school." The plaintiffs alleged that they had "continuously supported and assisted" the defendant in the child's education and spiritual growth. Lastly, the plaintiffs alleged that the defendant recently had deprived the child and the plaintiffs of the relationship and companionship they had previously enjoyed, and that they had been deprived of contact with the child, which had seriously disrupted the parent-like relationship with the child that the defendant had previously encouraged. The plaintiffs sought, inter alia, weekly visitation with the child, including overnight visitation every other weekend and weekday

visitation twice a week on alternate weeks, and permission to communicate with the child on a daily basis.

Before the trial court, the defendant challenged the court's subject matter jurisdiction over the petition. Ultimately, the trial court found that the plaintiffs had failed to set forth the specific, good faith allegations required by *Roth* v. *Weston*, supra, 259 Conn. 234–35, namely, that "the petitioner has a relationship with the child that is similar in nature to a parent-child relationship" and that "denial of the visitation will cause real and significant harm to the child." Accordingly, the trial court dismissed the petition for lack of subject matter jurisdiction. This appeal followed.

The dispositive issue on appeal is whether the trial court lacked subject matter jurisdiction over the plaintiffs' petition.[6] We conclude that the plaintiffs failed to plead the requisite level of harm under the second element of *Roth*, and, therefore, the court correctly dismissed the petition for lack of subject matter jurisdiction.[7]

We first set forth relevant principles of law and our standard of review. It is well established that "[a] court lacks discretion to consider the merits of a case [or claim] over which it is without jurisdiction . . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings." (Internal quotation marks omitted.) *Warner* v. *Bicknell*, 126 Conn. App. 588, 596, 12 A.3d 1042 (2011); see id., 594 ("[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented. . . . The court must fully resolve it before proceeding further with the case." [Internal quotation marks omitted.]). "Because a challenge to the jurisdiction of the court presents a question of law, our review of the court's legal conclusion is plenary." (Internal quotation marks omitted.) *Fuller* v. *Baldino*, 176 Conn. App. 451, 457, 168 A.3d 665 (2017).

In *Roth* v. *Weston*, supra, 259 Conn. 228, our Supreme Court recognized that the "constitutionally protected interest of parents to raise their children without interference undeniably warrants deference and, absent a powerful countervailing interest, protection of the greatest possible magnitude." To safeguard parents' rights against unwarranted intrusions into their authority, the court set forth "two requirements that must be satisfied in order for a court: (1) to have jurisdiction over a petition for visitation contrary to the wishes of a fit parent; and (2) to grant such a petition." Id., 234.

"First, the petition must contain specific, good faith allegations that the petitioner has a relationship with

the child that is similar in nature to a parent-child relationship. The petition must also contain specific, good faith allegations that denial of the visitation will cause real and significant harm to the child. As we have stated, that degree of harm requires more than a determination that visitation would be in the child's best interest. It must be a degree of harm analogous to the kind of harm contemplated by [General Statutes] §§ 46b-120 and 46b-129, namely, that the child is 'neglected, uncared-for or dependent.' The degree of specificity of the allegations must be sufficient to justify requiring the fit parent to subject his or her parental judgment to unwanted litigation. Only if these specific, good faith allegations are made will a court have jurisdiction over the petition." Id., 234–35.

"Second, once these high jurisdictional hurdles have been overcome, the petitioner must prove these allegations by clear and convincing evidence. Only if that enhanced burden of persuasion has been met may the court enter an order of visitation." Id., 235.

When faced with a motion to dismiss a petition for visitation on the basis that it fails to allege the jurisdictional elements set forth in *Roth*, "the trial court is required . . . to scrutinize the [petition] and to determine whether it contains specific, good faith allegations of both relationship and harm. . . . If the [petition] does not contain such allegations, the court lacks subject matter jurisdiction and the [petition] must be dismissed." (Citations omitted; footnote omitted.) *Fennelly* v. *Norton*, 103 Conn. App. 125, 142, 931 A.2d 269, cert. denied, 284 Conn. 918, 931 A.2d 936 (2007).

As stated previously, the second element of *Roth* requires that the petition "contain specific, good faith allegations that denial of the visitation will cause real and significant harm to the child. . . . [T]hat degree of harm requires more than a determination that visitation would be in the child's best interest. It must be a degree of harm analogous to the kind of harm contemplated by §§ 46b-120 and 46b-129, namely, that the child is 'neglected, uncared-for or dependent.' "[8] *Roth* v. *Weston*, supra, 259 Conn. 235; see also *Firstenberg* v. *Madigan*, 188 Conn. App. 724, 735, 205 A.3d 716 (2019) ("[t]he statute is clear and unambiguous that a petition for visitation must make specific, good faith allegations that the minor child will suffer real and significant harm akin to neglect if visitation were denied"). In *Roth*, our Supreme Court stated: "[I]t is unquestionable that in the face of allegations that parents are unfit, the state may intrude upon a family's integrity. . . . Therefore, it is clear that a requirement of an allegation such as abuse, neglect or abandonment would provide proper safeguards to prevent families from defending against unwarranted intrusions and would be tailored narrowly to protect the interest at stake." (Citations omitted.) *Roth* v. *Weston*, supra, 224. The court described as the

"more difficult issue . . . whether the child's own complementary interest in preserving relationships that serve his or her welfare and protection can also constitute a compelling interest that warrants intruding upon the fundamental rights of parents to rear their children." Id., 225. The court stated: "We can envision circumstances in which a nonparent and a child have developed such substantial emotional ties that the denial of visitation could cause serious and immediate harm to that child. For instance, when a person has acted in a parental-type capacity for an extended period of time, becoming an integral part of the child's regular routine, that child could suffer serious harm should contact with that person be denied or so limited as to seriously disrupt that relationship. Thus, proof of a close and substantial relationship and proof of real and significant harm should visitation be denied are, in effect, two sides of the same coin. Without having established substantial, emotional ties to the child, a petitioning party could never prove that serious harm would result to the child should visitation be denied. This is as opposed to the situation in which visitation with a third party would be in the best interests of the child or would be very beneficial. The level of harm that would result from denial of visitation in such a situation is not of the magnitude that constitutionally could justify overruling a fit parent's visitation decision. Indeed, the only level of emotional harm that could justify court intervention is one that is akin to the level of harm that would allow the state to assume custody under . . . §§ 46b-120 and 46b-129—namely, that the child is 'neglected, uncared-for or dependent' as those terms have been defined." Id., 225–26.

In the present case, the plaintiffs allege that denial of visitation "would cut [the child] off from all ties with her maternal side of the family. [The child's] mother abandoned her when she was [one year old] and we have been consistent and parent-like caregivers in her life ever since. Denying visitation will have the effect of [the child] feeling that we have abandoned her and compound her early childhood trauma [and] harm her."

We first address the allegation that denial of visitation would cut the child off from her maternal side of the family. Although it may not be in the child's best interest not to share a relationship with extended family, this allegation is not commensurate with the level of harm contemplated in *Roth*. Second, the plaintiffs allege that denying visitation will have the effect of the child feeling that they have abandoned her, citing the early abandonment by the child's mother. Again, while the absence of a parent and maternal family members could be detrimental to the child, it does not rise to the level of harm set forth in § 46b-120. See, e.g., *Fuller* v. *Baldino*, supra, 176 Conn. App. 459 (allegations that plaintiff has "very strong bond" with child and that child "suffers" and is "very emotional" when unable to see him do not

rise to level of neglect, abuse or abandonment [internal quotation marks omitted]); *Clements* v. *Jones*, 71 Conn. App. 688, 695–96, 803 A.2d 378 (2002) (holding insufficient allegations "that the plaintiff often received the child in an ill state, apparently due to the child's asthma, and needed to nurse him back to health, that the plaintiff spent much time nursing the child back to health, that separation would be unjust and inhumane to the child, and that visitation would be in the best interest of the child"). Finally, the plaintiffs' allegation that denying visitation will "compound [the child's] early childhood trauma [and] harm her" ignores the requirement that facts must be pleaded with sufficient specificity to warrant the court's intrusion. The plaintiffs do not allege how the child will be harmed and, without more, these allegations do not rise to the level of abuse, neglect, or abandonment contemplated by *Roth*. Accordingly, the trial court properly determined that the plaintiffs' petition failed to allege the second jurisdictional element set forth in *Roth* and properly dismissed the petition for lack of subject matter jurisdiction.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 46b-59 provides in relevant part: "(b) Any person may submit a verified petition to the Superior Court for the right of visitation with any minor child. Such petition shall include specific and good-faith allegations that (1) a parent-like relationship exists between the person and the minor child, and (2) denial of visitation would cause real and significant harm. . . ."

[2] Practice Book § 25-4 provides: "Every application or verified petition in an action for visitation of a minor child, other than actions for dissolution of marriage or civil union, legal separation or annulment, shall state the name and date of birth of such minor child or children, the names of the parents and legal guardian of such minor child or children, and the facts necessary to give the court jurisdiction. An application brought under this section shall comply with Section 25-5. Any application or verified petition brought under this Section shall be commenced by an order to show cause. Upon presentation of the application or verified petition and an affidavit concerning children, the judicial authority shall cause an order to be issued requiring the adverse party or parties to appear on a day certain and show cause, if any there be, why the relief requested in the application or verified petition should not be granted. The application or verified petition, order and affidavit shall be served on the adverse party not less than twelve days before the date of the hearing, which shall not be held more than thirty days from the filing of the application or verified petition."

[3] Counsel for the plaintiffs filed an appearance on May 4, 2017.

[4] The plaintiffs alleged in their petition that they are the grandparents of the child. In the defendant's memorandum of law in support of his motion to dismiss the petition, he represented that Hunter is the child's maternal grandfather, and Berthold is the child's maternal stepgrandmother.

[5] As with other family matters, the Judicial Branch provides a form, JD-FM-221, which a nonparent may choose to use to seek visitation with a child.

[6] On appeal to this court, the plaintiffs claimed that a number of procedural irregularities improperly led to the dismissal of their petition for visitation. The plaintiffs' briefing did not address the merits of the court's determination regarding its subject matter jurisdiction. Accordingly, we provided the parties with an opportunity to file supplemental briefing on the question of "whether the plaintiffs' petition satisfies the threshold requirements for the trial court to acquire subject matter jurisdiction pursuant to . . . § 46b-59?" The parties filed their supplemental briefs on November 15, 2019. Because we conclude that the trial court lacked subject matter jurisdiction over the petition, we do not address the procedural irregularities raised by the plaintiffs.

[7] Accordingly, we need not address whether the court properly determined

that the plaintiffs failed to allege the first *Roth* element.

[8] General Statutes § 46b-59 (a) (2) defines real and significant harm to mean "that the minor child is neglected, as defined in section 46b-120, or uncared for, as defined in said section."

General Statutes § 46b-120 (4) provides in relevant part that "[a] child may be found 'neglected' who, for reasons other than being impoverished, (A) has been abandoned, (B) is being denied proper care and attention, physically, educationally, emotionally or morally, or (C) is being permitted to live under conditions, circumstances or associations injurious to the well-being of the child . . . ."

General Statutes § 46b-120 (6) provides in relevant part that "[a] child may be found 'uncared for' (A) who is homeless, (B) whose home cannot provide the specialized care that the physical, emotional or mental condition of the child requires, or (C) who has been identified as a victim of trafficking, as defined in section 46a-170. . . ."

_____