******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

HENRY J. MARTOCCHIO *v.* STEPHANIE
SAVOIR ET AL.
(AC 35741)

DiPentima, C. J., and Lavine and Mullins, Js.

*Argued May 12—officially released October 14, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Shluger, J. [judgment]; Abery-Wetstone, J.
[denial of postjudgment motions])

*Henry J. Martocchio*, self-represented, the appel-
lant (plaintiff).

*JoAnn Paul*, for the appellees (defendant Roland
Savoir et al.).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Henry J. Martocchio, appeals from the judgment of the trial court denying several of his motions relating to his minor child. Although the plaintiff has raised a number of claims on appeal, the dispositive issue is whether the trial court found that the defendant grandparents, Roland Savoir and Tina Savoir, satisfied the standing test for a third party visitation contrary to the wishes of a fit parent as articulated by our Supreme Court in *Roth* v. *Weston*, 259 Conn. 202, 789 A.2d 431 (2002), and General Statutes § 46b-59.[1] We conclude that this threshold finding was not made by the trial court, and, accordingly we remand the case for further proceedings.

The following detailed recitation of the facts and procedural history is necessary to understand the complicated morass that confronted the Probate Court and the Superior Court. The plaintiff and the defendant Stephanie Savoir,[2] who never married, are the parents of the minor child, born in January, 2004. See *Martocchio* v. *Savoir*, 130 Conn. App. 626, 629, 23 A.3d 1282, cert. denied, 303 Conn. 901, 31 A.3d 1178 (2011). The plaintiff initially was not aware that he was the father of the child, and another individual was listed on the minor child's birth certificate.

On April 13, 2006, the defendants filed an application in the Probate Court for the district of Tolland for immediate temporary custody of the child. They alleged that their daughter, Stephanie Savoir, had returned home intoxicated and became argumentative and physically violent. After leaving for a period of two and one half hours, she returned and again was physically violent. The defendants requested assistance from the police, who arrested Stephanie Savoir.

Stephanie Savoir had informed the defendants that she would take the minor child to her boyfriend's apartment. The defendants expressed concern that this would be an unsuitable environment because they had been told that this individual previously had placed a knife to Stephanie Savoir's throat. The Probate Court issued a decree awarding temporary custody of the minor child to the defendants. The defendants later successfully moved to be appointed as guardians of the minor child and to have Stephanie Savoir removed as guardian.

In a letter dated May 22, 2006, Stephanie Savoir informed the plaintiff that he was the father of the minor child. On July 3, 2006, the plaintiff filed a paternity claim in the Probate Court, and subsequent DNA testing confirmed he is the father of the minor child.[3] On August 10, 2006, the plaintiff requested temporary custody of the minor child and later moved to be appointed as the minor child's sole guardian. The minor child was diagnosed with autism spectrum disorder at some point

during that month. On September 18, 2006, the Probate Court decreed that the defendants continue having temporary custody of the minor child and ordered the plaintiff to have supervised visitation with the minor child.

On September 25, 2006, the Department of Children and Families completed an assessment and did not recommend that the plaintiff be awarded temporary custody or guardianship of the minor child. The assessment, however, recommended that the plaintiff have unsupervised visitation with the minor child. The next day, after the parties reached an agreement, the Probate Court awarded the plaintiff unsupervised visitation with the minor child.

On November 13, 2006, the plaintiff moved to transfer the matter to the Superior Court, which the Probate Court granted. In December, 2006, the plaintiff moved, inter alia, for an order of reasonable visitation and for custody. On January 8, 2007, the court, *Shluger*, *J.*, in accordance with the agreement of the parties, awarded the plaintiff visitation at his residence. In March, 2007, the parties agreed to further visitation between the plaintiff and the minor child.

On September 25, 2007, the plaintiff moved for an order of immediate temporary custody of the minor child. Judge Shluger approved an agreement of the parties and ordered that the plaintiff have sole legal custody of the minor child and that the child live with the plaintiff. The defendants were granted visitation every other weekend. On January 24, 2008, the plaintiff moved to modify the visitation award. The parties again reached an agreement that the court accepted and ordered.

A dispute about medical treatment for the minor child led the defendants to file an ex parte motion for an immediate hearing and a motion for order to enjoin medical treatment in March, 2008. The plaintiff responded by filing a motion for contempt, alleging that the defendants were violating the prior agreement of the parties relating to visitation. On March 23, 2008, the plaintiff filed a motion to terminate the defendants' visitation with the minor child. His motion alleged the following: "I . . . ask the court to consider any past agreements with [the defendants] regarding unsupervised vitiation with my son . . . null and void due to their behavior, possible neglect, constant conflict regarding child's health care and safety, the child's safety at the third party residence, attempted strain of father-son relationship, constant accusations of intent to harm, and not respecting the wishes of the father with respect to the case of the child." The plaintiff also referenced the seminal case of *Roth* v. *Weston*, supra, 259 Conn. 202.

Both parties then filed additional motions. On April 2, 2008, the defendants filed a motion for contempt and a motion to modify, seeking custody of the minor child.

On April 23, 2008, the plaintiff filed a motion to dismiss the defendants' motion to modify for lack of subject matter jurisdiction. In the accompanying memorandum of law, the plaintiff argued, inter alia, that the defendants had not filed a petition alleging that they had a relationship with the child akin to that of a parent or that denial of visitation would cause real and significant harm to the child, as required by *Roth*.

On July 28, 2008, Judge Shluger issued a memorandum of decision addressing a number of motions filed by the parties. The court found, by a preponderance of the evidence, that the defendants "have a relationship with the child akin to that of parents." The court made no findings regarding the harm that would result from terminating the defendants' visitation. It also found that the plaintiff was a fit parent.[4] The court ordered that the plaintiff have sole custody of the minor child, but that the defendants have visitation every other weekend. With respect to the plaintiff's "motion to dismiss the [defendants'] visits and motion to dismiss for subject matter jurisdiction," the court stated that these motions were "addressed in these orders."

On September 26, 2011, Stephanie Savoir consented to the termination of her parental rights. On September 4, 2012, the defendants filed a motion for contempt, alleging that the plaintiff had refused their visitations with the minor child since June 2, 2012. They further claimed that his actions had violated Judge Shluger's July 28, 2008 order. The plaintiff then filed numerous motions, including: (1) a motion for counsel for the minor child and the guardian ad litem; (2) motions for attorney's fees, expert witness fees, filing fees and transcript fees; (3) a motion for updated family relations investigation; (4) a motion to dismiss the defendants' contempt motion due to lack of standing; (5) a motion to dismiss for lack of standing because termination of Stephanie Savoir's parental rights voided the defendants' visitation; (6) a motion to dismiss due to lack of subject matter jurisdiction that alleged discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and lack of standing of the defendants; (7) a motion to transfer the case; and (8) a motion to dismiss the contempt motion due to lack of standing and subject matter jurisdiction. On February 13, 2013, the court, *Abery-Wetstone, J.*, ordered the parties to submit briefs regarding the court's jurisdiction following the termination of Stephanie Savoir's parental rights.

On May 17, 2013, Judge Abery-Wetstone issued a memorandum of decision. She concluded that the termination of Stephanie Savoir's parental rights did not automatically terminate the visitation rights previously granted to the defendants. She reasoned that their visitation right was "not dependent on a derivative relationship with a parent, but rather . . . contingent upon

satisfaction of the standards set forth in *Roth* v. *Weston*, [supra, 259 Conn. 202] and codified in [§] 46b-59." The court further stated that the defendants "satisfied the *Roth* standard as articulated in Judge Shluger's decision of July, 2008. The plaintiff did not appeal that decision, and that decision stands as the law of the case." The court denied the nine motions filed by the plaintiff.

On May 28, 2013, the plaintiff filed a motion to reargue and for reconsideration, which the court denied. The plaintiff then timely appealed from Judge Abery-Wetstone's decision. Additional facts will be set forth as needed.

As we stated previously, the dispositive issue in this appeal is whether, in the absence of a proper *Roth* analysis, the defendants have standing to proceed with their claim for visitation with the minor child. Accordingly, we begin our analysis with a discussion of that case. In *Roth* v. *Weston*, supra, 259 Conn. 205, our Supreme Court considered whether § 46b-59 violated the due process clauses of the federal and state constitutions. The court was obligated to revisit § 46b-59 and its decision in *Castagno* v. *Wholean*, 239 Conn. 336, 684 A.2d 1181 (1996), overruled in part by *Roth* v. *Weston*, 259 Conn. 202, 217, 789 A.2d 431 (2002), after the United States Supreme Court's decision in *Troxel* v. *Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). Our Supreme Court observed that "*Troxel* teaches that courts must presume that fit parents act in the best interests of their children, and that so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children. . . . Moreover, *Troxel* confirms that among those interests lying at the core of a parent's right to care for his or her own children is the right to control their associations. . . . The essence of parenthood is the companionship of the child and the right to make decisions regarding his or her care, control, education, health, religion and association. . . . Furthermore, *Troxel* confirms that the family integrity is the core element upon which modern civilization is founded and that the safeguarding of familial bonds is an innate concomitant of the protective status accorded the family as a societal institution." (Citations omitted; internal quotation marks omitted.) *Roth* v. *Weston*, supra, 216–17.

After determining that strict scrutiny was the appropriate standard of review; id., 217–18; our Supreme Court then considered the standing requirements of § 46b-59. Id., 218–19. "Consequently, we conclude that, in light of the presumption of parental fitness under *Troxel*, parents should not be faced with unjustified intrusions into their decision-making in the absence of

specific allegations and proof of a relationship of the type contemplated herein. . . . The extension of statutory rights to persons other than a child's parents comes with an obvious cost. . . . Proof of the nature of a parent-like relationship between a person seeking visitation and the child would provide the jurisdictional safeguard necessary to prevent families from having to defend against unjustified petitions for visitations. *Accordingly, any third party . . . seeking visitation must allege and establish a parent-like relationship as a jurisdictional threshold in order to pass constitutional muster and to be consistent with the legislative intent.*" (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) Id., 221–22.

The court then addressed the second jurisdictional factor, namely, what must be alleged by a third party to justify intrusion into the parental decision-making process. Id., 222. It specifically noted that the best interests of the child are secondary to that of the parents' rights in this circumstance.[5] Id., 223. "We are persuaded, therefore, that an allegation, along with proof thereof, that the parent's decision regarding visitation will cause the child to suffer real and substantial emotional harm likewise permits a compelling state interest that will permit interference with parental rights, provided the petitioner has established a parent-like relationship with the child." Id., 226. The court described these requirements as an "admittedly high hurdle . . . ." Id., 229. Finally, the court, using its supervisory powers, concluded that "a nonparent petitioning for visitation pursuant to § 46b-59 must prove the requisite relationship and harm, as we have previously articulated, by clear and convincing evidence." Id., 232.

The court summarized its decision as follows: "Implicit in the statute is, as we have stated, a rebuttable presumption that visitation that is opposed by a fit parent is not in a child's best interest. In sum, therefore, we conclude that there are two requirements that must be satisfied in order for a court: (1) to have jurisdiction over a petition for visitation contrary to the wishes of a fit parent; and (2) to grant such a petition.

"First, the petition must contain specific, good faith allegations that the petitioner has a relationship with the child that is similar in nature to a parent-child relationship. The petition must also contain specific, good faith allegations that denial of the visitation will cause real and significant harm to the child. As we have stated, that degree of harm requires more than a determination that visitation would be in the child's best interest. It must be a degree of harm analogous to the kind of harm contemplated by [General Statutes] §§ 46b-120 and 46b-129, namely, that the child is neglected, uncared-for or dependent. The degree of specificity of the allegations must be sufficient to justify requiring the fit parent to subject his or her parental judgment to unwanted

litigation. Only if these specific, good faith allegations are made will a court have jurisdiction over the petition.

"Second, once these high jurisdictional hurdles have been overcome, the petitioner must prove these allegations by clear and convincing evidence. Only if that enhanced burden of persuasion has been met may the court enter an order of visitation." (Internal quotation marks omitted.) Id., 234–35; see also *Crockett* v. *Pastore*, 259 Conn. 240, 789 A.2d 453 (2002); *Clements* v. *Jones*, 71 Conn. App. 688, 690–93, 803 A.2d 378 (2002).[6]

Subsequent cases have explicated our jurisprudence with respect to § 46b-59. For example, in *Denardo* v. *Bergamo*, 272 Conn. 500, 511, 863 A.2d 686 (2005), our Supreme Court concluded that *Roth* applied retroactively. It also stated that *Roth* "established the threshold requirements for a trial court to acquire subject matter jurisdiction to entertain a petition for visitation pursuant to § 46b-59 . . . ." Id.; see also *Fennelly* v. *Norton*, 103 Conn. App. 125, 136, 931 A.2d 269 (*Roth* distinguished issue of whether court had jurisdiction over application for visitation from whether court should grant such application), cert. denied, 284 Conn. 918, 931 A.2d 936 (2007). Furthermore, the *Roth standards apply equally whether a third party initially moves for an order of visitation or a parent moves to modify such an order. Denardo* v. *Bergamo*, supra, 509; see also *Warner* v. *Bicknell*, 126 Conn. App. 588, 595, 12 A.3d 1042 (2011). Guided by these cases, we turn to the facts of the present matter.

As previously noted, the defendants were granted custody of the minor child in April, 2006. In September, 2007, following an agreement of the parties, Judge Shluger awarded the plaintiff sole custody of the minor child, and visitation between the defendants and the minor child. It was not until March 23, 2008, that the plaintiff moved to terminate the defendants' visitation. In his July 28, 2008 memorandum of decision, Judge Shluger denied the plaintiff's motions to terminate visitation and his motion to dismiss for lack of subject matter jurisdiction. Instead, he ordered visitation for the defendants every other weekend. The plaintiff did not appeal from Judge Shluger's decision.[7] In the decision that is the subject of this appeal, Judge Abery-Wetstone relied on Judge Shluger's conclusion that the defendants had satisfied *Roth*.

We conclude that a *Roth* finding did not occur in the present case. As such a finding implicates standing, and therefore the court's subject matter jurisdiction,[8] the plaintiff's failure to appeal directly from Judge Shluger's decision is not fatal to his appeal because, as we later explain, claims of this nature may be raised at any time.[9]

We begin by setting forth the relevant legal principles regarding subject matter jurisdiction. "A determination regarding a trial court's subject matter jurisdiction is a

question of law and, therefore, we employ the plenary standard of review and decide whether the court's conclusions are legally and logically correct and supported by the facts in the record. . . . [I]t is well established that a reviewing court properly may address jurisdictional claims that neither were raised nor ruled on in the trial court. Indeed, [o]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented. . . . The court must fully resolve it before proceeding further with the case." (Citation omitted; internal quotation marks omitted.) *Warner* v. *Bicknell*, supra, 126 Conn. App. 594; see also *Fennelly* v. *Norton*, supra, 103 Conn. App. 136. Finally, we are mindful that "[a] lack of subject matter jurisdiction can be raised at any time and cannot be waived by either party." (Internal quotation marks omitted.) *Lynch* v. *Lynch*, 135 Conn. App. 40, 55, 43 A.3d 667 (2012); *Fewtrell* v. *Fewtrell*, 87 Conn. App. 526, 530, 865 A.2d 1240 (2005).

An examination of Judge Shluger's decision[10] reveals that he failed to undertake a proper *Roth* analysis when ruling in 2008. Specifically, there are two deficiencies in that 2008 decision relating to the defendants' standing.[11] First, following the plaintiff's motion to end the agreement of the parties and terminate the defendants' visitation, the defendants did not file a petition for visitation. See *Warner* v. *Bicknell*, supra, 126 Conn. App. 596. The defendants should have submitted such a petition following the plaintiff's motion to terminate visitation. Such a petition, containing specific, good faith allegations that the defendants had a relationship with the minor child similar to that of a parent-child relationship and that denial of the visitation would cause real and significant harm to the minor child, was required under our law. See *Fennelly* v. *Norton*, supra, 103 Conn. App. 140. Absent this petition, Judge Shluger should not have proceeded to address the merits of the case.

Second, Judge Shluger's decision never addressed the issue of whether denial of the visitation would cause real and significant harm to the minor child. See *Carrier* v. *King*, 105 Conn. App. 391, 392–93, 939 A.2d 1, cert. denied, 286 Conn. 904, 943 A.2d 1101 (2008); see also *Warner* v. *Bicknell*, supra, 126 Conn. App. 596; *Fennelly* v. *Norton*, supra, 103 Conn. App. 136 (court must consider independently *Roth* claims implicating subject matter jurisdiction of trial court before addressing any other issue raised by either party); Practice Book § 25-4.

We conclude that Judge Abery-Wetstone's reliance on Judge Shluger's decision regarding the jurisdictional test of *Roth* was improper. In the 2013 memorandum of decision,[12] she stated that the defendants had "satisfied the *Roth* standard as articulated in Judge Shluger's decision of July, 2008. The plaintiff did not appeal that decision, and that decision stands as the law of the case." This court, however, has stated that "when the

jurisdiction of the trial court is implicated, an adjudicator is not bound by the law of the case doctrine, but should consider independently the issue of jurisdiction." *Pinchbeck* v. *Dept. of Public Health*, 65 Conn. App. 201, 207–208, 782 A.2d 242, cert. denied, 258 Conn. 928, 783 A.2d 1029 (2001); see also *Lewis* v. *Gaming Policy Board*, 224 Conn. 693, 698–99, 620 A.2d 780 (1993). Judge Abery-Wetstone improperly deferred to Judge Shluger's earlier decision and should have addressed the issue of whether the defendants had standing under *Roth*.

Our conclusion regarding the lack of a proper *Roth* analysis must be considered in the context of the highly unusual circumstances of this case.[13] The defendants have had court-ordered visitation with the minor child since 2007. The record does not reveal any information as to the current relationship between the minor child and the defendants. This relationship, however, must be considered in light of the principle set forth by the United States Supreme Court in *Troxel*, and by our Supreme Court in *Roth* and its progeny that a fit parent has a constitutional right to control his child's associations without interference from the state. We conclude, therefore, that the May 17, 2013 judgment must be reversed and the case remanded for a determination of whether the defendants have standing under *Roth* to proceed with their subsequently filed petition for visitation with the minor child. The other matters raised in the motions filed by the parties should be addressed if, and only if, the trial court concludes that the defendants have satisfied the jurisdictional requirements of *Roth*.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

[1] General Statutes § 46b-59 (b) provides: "Any person may submit a verified petition to the Superior Court for the right of visitation with any minor child. Such petition shall include specific and good-faith allegations that (1) a parent-like relationship exists between the person and the minor child, and (2) denial of visitation would cause real and significant harm. Subject to subsection (e) of this section, the court shall grant the right of visitation with any minor child to any person if the court finds after hearing and by clear and convincing evidence that a parent-like relationship exists between the person and the minor child and denial of visitation would cause real and significant harm."

[2] Stephanie Savoir is not a party to this appeal. Hereafter, references in this opinion to the defendants are to Roland Savoir and Tina Savoir.

[3] On August 23, 2006, the Probate Court issued a decree ordering the Department of Health Services, vital records section, to conform the birth certificate of the minor child to the finding that the plaintiff is his father.

[4] The defendants previously had withdrawn their claim for joint custody of the minor child.

[5] If, however, the court concludes that a petitioning party has met the *Roth* test and a relationship exists with a nonparent that is entitled to be fostered, the best interests of the child guides the court in determining how to best foster that relationship. *DiGiovanna* v. *St. George*, 300 Conn. 59, 78–79, 12 A.3d 900 (2011).

[6] In *DiGiovanna* v. *St. George*, 300 Conn. 59, 78, 12 A.3d 900 (2011), our Supreme Court concluded that the trial court improperly had denied visitation after concluding that the petitioning party had met the *Roth* standard.

[7] Judge Shluger's decision mentioned the requirements of *Roth*, but did

not address the threshold jurisdictional question. The decision focused on the defendants' attempt to substitute their judgment as to the best medical treatment for the minor child.

[8] See, e.g., *Perry* v. *Perry*, 312 Conn. 600, 626,      A.3d      (2014); *Devone* v. *Finley*, 148 Conn. App. 647, 651–52, 87 A.3d 1120, cert. denied, 312 Conn. 912, 93 A.3d 595 (2014).

[9] Despite this broad language, there are, in fact, boundaries as to when challenges to the jurisdiction of the court may be brought. "The modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal." *Monroe* v. *Monroe*, 177 Conn. 173, 178, 413 A.2d 819, cert. denied, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979); see also *Vogel* v. *Vogel*, 178 Conn. 358, 363, 422 A.2d 271 (1979) (Supreme Court declined to consider claim of lack of jurisdiction made twenty years after initial judgment rendered); *Daly* v. *Daly*, 19 Conn. App. 65, 70, 561 A.2d 951 (1989) (Appellate Court declined to considered jurisdictional claim made eighteen years after judgment of divorce had been rendered).

In *Morris* v. *Irwin*, 4 Conn. App. 431, 434, 494 A.2d 626 (1985), this court stated: "Litigation about whether subject matter jurisdiction exists should take into account whether the litigation is a collateral or direct attack on the judgment, whether the parties consented to the jurisdiction originally, the age of the original judgment, whether the parties had an opportunity originally to contest jurisdiction, the prevention of a miscarriage of justice, whether the subject matter is so far beyond the jurisdiction of the court as to constitute an abuse of authority, and the desirability of the finality of judgments." See also *Investment Associates* v. *Summit Associates, Inc.*, 132 Conn. App. 192, 198, 31 A.3d 820 (2011), aff'd, 309 Conn. 840, 74 A.3d 1192 (2013).

Although the present case is, in part, a collateral attack on Judge Shluger's 2008 memorandum of decision, we note that the plaintiff does not challenge the orders contained therein. Additionally, the plaintiff has not consented to the jurisdiction of the court, and a substantial amount of time has not elapsed since Judge Shluger's decision. Furthermore, the plaintiff has a constitutional right as a fit parent to determine with whom the minor child associates. Finally, we note that the defendants did not argue in their brief that the plaintiff's claim was untimely. For these reasons, we cannot say that his jurisdictional claim is foreclosed by the passage of time.

[10] The primary focus of Judge Shluger's opinion was on which party would make the final decision regarding the medical treatment for the minor child's autism.

[11] We also note that Judge Shluger's factual findings were made using the preponderance of the evidence standard. Our Supreme Court expressly stated that the jurisdictional allegations in a petition for visitation must be proved by clear and convincing evidence. *Roth* v. *Weston*, supra, 259 Conn. 235; see also *DiGiovanna* v. *St. George*, 300 Conn. 59, 70, 12 A.3d 900 (2011). A claim regarding the proper burden of proof, however, does not implicate the jurisdiction of the court and should have been raised in a direct appeal from the 2008 decision.

[12] The primary issue decided by Judge Abery-Wetstone was whether the termination of Stephanie Savoir's parental rights automatically terminated the visitation rights of the defendants.

[13] Subsequent to this appeal, the defendants filed a petition for visitation with the minor child on October 31, 2013. On November 4, 2013, Judge Shluger issued the following: "The [defendants] have a parent like relationship with the minor child and that to deny access between child and [the defendants] would cause real and significant harm to the child." Judge Shluger then denied the plaintiff's motion to reargue his clarification.