******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

OLIVIA ANNA FIRSTENBERG *v.*
MATTHEW C. MADIGAN
(AC 39771)

Alvord, Bright and Norcott, Js.

*Syllabus*

The proposed intervenor, F, appealed to this court from the judgment of
the trial court denying his motion to intervene in a custody action
brought by the plaintiff mother against the defendant father with respect
to the parties' minor child. After the trial court rendered judgment
granting the parties joint legal custody of the minor child in accordance
with their parenting access agreement, F, who is the minor child's mater-
nal grandfather, filed a motion to intervene in which he allegedly sought
third-party visitation pursuant to the applicable statute (§ 46b-59 [b]).
The trial court denied the motion to intervene, from which F appealed
to this court, claiming, inter alia, that the trial court incorrectly construed
his motion to intervene as seeking custody pursuant to the applicable
statute (§ 46b-57), when the motion sought visitation with the minor
child pursuant to § 46b-59 (b). *Held* that, even if F's motion to intervene
was in fact a petition for visitation, the trial court lacked subject matter
jurisdiction over the petition because it failed to meet the threshold
jurisdictional requirements of § 46b-59 (b) for a third party seeking
visitation, as it did not sufficiently allege that F had a parent-like relation-
ship with the minor child or that the denial of visitation would result
in real and significant harm to the minor child: although F generally
alleged that he had a loving relationship with the minor child, the petition
focused almost entirely on the defendant's conduct and fitness as a
parent and was devoid of any specific, good faith allegations that F
acted in a parental type of capacity to the minor child or that the denial
of visitation would cause real and significant harm akin to neglect of the
minor child; accordingly, because the trial court did not have jurisdiction
over the purported petition for visitation, it should have rendered judg-
ment dismissing the petition instead of denying it.

Argued December 3, 2018—officially released March 26, 2019

*Procedural History*

Action for custody of the parties' minor child, brought
to the Superior Court in the judicial district of Fairfield,
where the court, *Sommer, J.*, rendered judgment grant-
ing the parties joint legal custody of the minor child in
accordance with the parties' agreement; thereafter, the
court denied the motion to intervene filed by the minor
child's maternal grandfather, and the maternal grandfa-
ther appealed to this court. *Improper form of judgment;
judgment directed.*

*Eric Firstenberg*, self-represented, the appellant
(maternal grandfather).

*David A. McGrath*, with whom was *Carla Zahner*,
for the appellee (defendant).

*Opinion*

NORCOTT, J. This appeal stems from a custody action between the plaintiff, Olivia Anna Firstenberg, and the defendant, Matthew C. Madigan, regarding their minor child. The appellant, Eric Firstenberg (appellant), the child's maternal grandfather, appeals from the judgment of the trial court denying his motion to intervene in the custody action under General Statutes § 46b-57.[1] On appeal, the appellant raises a number of claims, including that the court improperly interpreted his motion seeking visitation pursuant to General Statutes § 46b-59[2] as a motion to intervene seeking custody. We conclude that even if we assume, arguendo, that the appellant's motion to intervene was in fact a petition for visitation, as the appellant contends, he has failed to satisfy the threshold jurisdictional requirements under § 46b-59. Accordingly, we reverse the judgment of the court and remand the case with direction to dismiss the petition for visitation for lack of subject matter jurisdiction.

The following facts are relevant on appeal. The plaintiff and the defendant are the unmarried parents of a child born in July, 2011. The plaintiff filed a custody application in October, 2013. Throughout the pendency of the litigation the appellant filed numerous motions to intervene. On June 24, 2015, the plaintiff and the defendant, at the time the only parties to the custody action, entered into a parenting access agreement regarding the custody of their minor child. After this agreement was reached, the appellant, on August 27, 2015, filed the operative motion to intervene wherein he allegedly sought visitation pursuant to § 46b-59.[3]

The August 27, 2015 motion focused largely on the past conduct of the defendant, as the appellant sought to put the fitness of the defendant as a parent at issue. Of the appellant's eleven page motion, only three sentences mention the nature of the appellant's relationship with the minor child. First, when recounting an outburst of the minor child toward the appellant after the minor child returned from a visit with the defendant, the appellant stated, "I have a loving relationship with my grandson—his behavior toward me was out of character and alarming." The only other references in the appellant's motion pertaining to his relationship with his grandson were the statements, "I am the proud father of [the plaintiff] and the adoring, maternal grandfather of [the minor child]," and "I love my daughter and grandson to infinity and beyond." The motion contained not a single allegation regarding any harm the minor child would suffer if the appellant's request for visitation was denied. Additionally, the relief requested in the motion focused solely on the defendant. Specifically, the appellant requested that "(1) [his] motion to intervene be granted as it is in the best interest of the minor child . . . (2) [the] defendant be held in con-

tempt for deliberately and wilfully committing fraud on the court in connection with the ex parte hearing; (3) as ordered by Judge Sommer, the parties' June 24, 2015 agreement be nullified as it is not in the best interest of the minor child . . . (4) [the defendant's attorney] be held in contempt for his failure to inform the court of the material misrepresentations he made to the court in connection with the ex parte proceeding; (5) further fact-finding take place to determine if [the] defendant tampered with the e-mail dated April 22, 2015; [and] (6) [the] defendant be ordered to receive ongoing psychiatric treatment with report backs to the court." Nowhere in the appellant's request for relief was visitation mentioned.

The court heard argument on the appellant's motion at a hearing held on October 15, 2015, at which the plaintiff, the defendant, their respective attorneys, and the appellant were present. At the hearing, the court questioned the appellant as to why intervention should be granted when both parents were represented by counsel and had actively participated in the case. The gravamen of the appellant's argument was simply that "the Connecticut Supreme Court said if there [was] a claim that one of the parents [was] unfit, the standard of review would be different [than articulated in *Roth* v. *Weston*, 259 Conn. 202, 789 A.2d 431 (2002).]" No evidence was presented at the hearing.

On February 26, 2016, the appellant filed a motion seeking to have his motion to intervene reassigned to another judge because the court had not issued a decision on the underlying matter within 120 days as required by Practice Book § 11-19 (b) and the parties had not agreed to waive the time limit. The court, on March 1, 2016, issued an order granting the appellant's motion to intervene, finding that he had "satisfied the requirements of [§] 46b-59 (b) by clear and convincing evidence that a parent-like relationship exists and denial of visitation would cause harm to the child."

The defendant subsequently filed a motion to reargue in which he claimed that the court had not applied § 46b-59 properly because the order contained a finding of "harm" instead of "real and significant harm" as required under the statute. The court granted the motion to reargue and issued a memorandum of decision in which it vacated its prior order and denied the appellant's motion to intervene. Although the basis for the defendant's motion to reargue was that the court had applied the wrong standard for harm under § 46b-59, the court denied the motion to intervene under a custody analysis pursuant to § 46b-57.[4]

On appeal the appellant raises numerous arguments pertaining to the court's granting of the defendant's motion to reargue and its resultant denial of the appellant's motion to intervene. Of particular relevance to our analysis, the appellant argues that the court incorrectly

considered his motion to intervene as seeking custody pursuant to § 46b-57, when he was actually seeking visitation under § 46b-59. In response, the defendant argues that if the appellant's motion is treated as a petition for visitation, then it should have been dismissed for lack of subject matter jurisdiction, as it failed to meet the jurisdictional requirements imposed by § 46b-59. We agree with the defendant.

We begin by setting forth the applicable law and standard of review. "At the outset, we note our well settled standard of review for jurisdictional matters. A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted). *Clements* v. *Jones*, 71 Conn. App. 688, 690, 803 A.2d 378 (2002). To determine whether the court had jurisdiction over a petition for visitation, we compare the allegations of the petition to the statutorily prescribed jurisdictional requirements. See *Roth* v. *Weston*, supra, 259 Conn. 235

Viewing the appellant's motion as a petition for visitation, § 46b-59 is the controlling statute.[5] Section 46b-59 (b) allows any person to "submit a verified petition to the Superior Court for the right of visitation with any minor child." In order for the court to have jurisdiction, the petition must include "specific and good-faith allegations that (1) a parent-like relationship exists between the person and the minor child, and (2) denial of visitation would cause real and significant harm." General Statutes § 46b-59 (b). Once these jurisdictional requirements are met, the petitioner must then prove these allegations by clear and convincing evidence. General Statutes § 46b-59 (b).

The defendant argues that the appellant failed to allege specific facts supporting either of the required elements. The appellant argues that his motion to intervene contained specific and good faith allegations that he had a parent-like relationship with his grandson and that denial of visitation would cause real and substantial harm. We agree with the defendant.[6]

We conclude that viewed as a petition for visitation, the appellant's August 27, 2015 motion to intervene failed to meet the jurisdictional requirements of § 46b-59 (b). First, the appellant's motion did not contain specific allegations that he has a parent-like relationship with his grandson. Section 46b-59 (c) enumerates nine nonexclusive factors that the court may consider in determining whether a petitioner has a parent-like relationship with a minor child. Such factors include "(1) [t]he existence and length of a relationship between the person and the minor child prior to the submission of a petition pursuant to this section; (2) [t]he length

of time that the relationship between the person and the minor has been disrupted; (3) [t]he specific parent-like activities of the person seeking visitation toward the minor child; (4) [a]ny evidence that the person seeking visitation has unreasonably undermined the authority and discretion of the custodial parent; (5) [t]he significant absence of a parent from the life of a minor child; (6) [t]he death of one of the minor child's parents; (7) [t]he physical separation of the parents of the minor child; (8) [t]he fitness of the person seeking visitation; and (9) [t]he fitness of the custodial parent." General Statutes § 46b-59 (c).

As noted previously in this opinion, the appellant's motion focused almost entirely on the defendant's conduct and his fitness as a parent. It was substantially devoid of any specific and good faith allegations that would give rise to a parent-like relationship between the appellant and the minor child. As we have noted, the motion merely alleged that the appellant has a loving relationship with his grandson and loves his daughter and grandson "to infinity and beyond." These broad statements regarding a loving relationship fail to satisfy the statutory requirements of § 46b-59 (b) and (c), which require specific, good faith allegations that the appellant and minor child share a parent-child relationship. See *Crockett* v. *Pastore*, 259 Conn. 240, 248, 789 A.2d 453 (2002). Our Supreme Court in *Crockett*, when considering allegations substantially similar to the appellant's, concluded that "it is the nature of the relationship, not the nomenclature, that satisfies the constitutional mandate." Id. Therefore, the appellant was required to plead that his relationship with the child was such that he "acted in a parental type of capacity for an extended period of time." Id; see also General Statutes § 46b-59 (c) (1). The appellant's motion did not contain specific factual allegations that he has acted in a parental type of capacity with respect to his grandson.

The appellant argues that it was not necessary for him to meet the requirements of § 46b-59 (c) because he alleged that he previously had established a parent-like relationship under § 46b-59 (d). Section 46b-59 (d) states that "[i]n determining whether a parent-like relationship exists between a grandparent seeking visitation pursuant to this section and a minor child, the Superior Court may consider, in addition to the factors enumerated in subsection (c) of this section, the history of regular contact and *proof* of a close and substantial relationship between the grandparent and the minor child." (Emphasis added). The appellant's argument fails for two reasons. First, the plain language of this subsection reveals that subsection (d) is not to be read in isolation. Rather, the regular contact and close relationship factors in subsection (d) must be considered in addition to those factors enumerated in subsection (c), which include, inter alia, the specific parent-like activities of the person seeking visitation toward the

minor child. The appellant's conclusory allegation that he previously had established a parent-like relationship with his grandson is, alone, insufficient to establish a close and substantial relationship. Second, § 46b-59 (d) requires that the petitioner prove the close and substantial relationship. Section 46b-59 (b) makes clear that the issue of sufficient proof is reached only if the petition contains specific and good faith allegations that a parent-like relationship exists in the first place. See also *Roth v. Weston*, supra, 259 Conn. 235. In other words, the court may reach whether a petitioner has proven § 46b-59 (d), if and only if, the petitioner made specific and good faith allegations that a parent-like relationship exists.

The appellant further argues that the court should have looked beyond his motion and reviewed the entire record to determine whether he had a parent-like relationship with his grandson. Specifically, the appellant, referring to a previous motion to intervene that the court denied, argues that the "court noted the close and nurturing relationship that [he had] maintained with [his] grandson since birth." The passing observations of a court made in connection with a prior motion are irrelevant to whether the current motion meets the statutorily prescribed requirements for the court to have jurisdiction over the motion. The law is clear that whether the petitioner alleged the required jurisdictional elements is determined by "examin[ing] the allegations *of the petition* and compar[ing] them to the [statutorily prescribed] jurisdictional requirements . . . ." (Emphasis added.) *Roth* v. *Weston*, supra, 259 Conn. 235; see also *Fennelly* v. *Norton*, 103 Conn. App. 125, 139, 931 A.2d 269 ("[b]ecause the defendant's motion to dismiss for lack of jurisdiction was predicated on the insufficiency of the application for visitation, it was inappropriate for the court to look beyond that pleading and permit the plaintiffs to augment the application with additional allegations at the evidentiary hearing"), cert. denied, 284 Conn. 918, 931 A.2d 936 (2007); *Fuller* v. *Baldino*, 176 Conn. App. 451, 456 n.4, 168 A.3d 665 (2017) (noting that case law suggests that "courts determining whether the jurisdictional requirements of *Roth* have been satisfied cannot look beyond the four corners of the application itself"). In light of the appellant's failure to allege a parent-like relationship in his motion, he has failed to satisfy the first jurisdictional requirement under § 46b-59 (b).

Moreover, the defendant argues that the motion to intervene failed to sufficiently allege that the denial of visitation will cause real and significant harm to the minor child. In order to succeed on this requirement, the appellant must have alleged that the "*denial of visitation* would cause real and significant harm." (Emphasis added.) General Statutes § 46b-59 (b); see also *Crockett* v. *Pastore*, supra, 259 Conn. 249–50. Section 46b-59 (a) (2) defines "[r]eal and significant harm"

to mean "that the minor child is neglected, as defined in [General Statutes §] 46b-120, or uncared for, as defined in said section."[7]

The appellant's motion failed to allege that the minor child will suffer real and significant harm if his petition for visitation is denied. In his motion, the appellant made several unsubstantiated allegations about the defendant and his attorney. None of these allegations, however, directly addresses the type of real and substantial harm contemplated by §§ 46b-59 and 46b-120. Nor did the appellant's motion allege that these harms would be reduced if visitation were granted. The statute is clear and unambiguous that a petition for visitation must make specific, good faith allegations that the minor child will suffer real and significant harm akin to neglect if visitation were denied. Because the appellant's motion made no reference to the type of harm the minor child would endure if visitation were denied, his motion lacked the necessary allegations for the court to have subject matter jurisdiction.

This conclusion is further supported by the appellant's concession before this court that his grandson would not be harmed were he not permitted visitation. The appellant, in his reply brief, stated, "I am certainly not claiming that I am being denied visitation with my grandson or that my grandson would suffer immensely were he not permitted to see me."

Because the appellant's motion failed to include "specific and good-faith allegations that (1) a parent-like relationship exists between [the appellant] and the minor child, and (2) denial of visitation would cause real and significant harm," it did not meet the jurisdictional thresholds of § 46b-59 (b). Consequently, we conclude that the trial court did not have jurisdiction over the appellant's petition for visitation.

The form of the judgment is improper, the judgment denying the appellant's petition for visitation is reversed and the case is remanded with direction to render judgment dismissing the petition for visitation.

In this opinion the other judges concurred.

[1] General Statutes § 46b-57 provides: "In any controversy before the Superior Court as to the custody of minor children, and on any complaint under this chapter or section 46b-1 or 51-348a, if there is any minor child of either or both parties, the court, if it has jurisdiction under the provisions of chapter 815p, may allow any interested third party or parties to intervene upon motion. The court may award full or partial custody, care, education and visitation rights of such child to any such third party upon such conditions and limitations as it deems equitable. Before allowing any such intervention, the court may appoint counsel for the minor child or children pursuant to the provisions of sections 46b-12 and 46b-54. In making any order under this section, the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if the child is of sufficient age and capable of forming an intelligent preference."

[2] General Statutes § 46b-59 (b) provides: "Any person may submit a verified petition to the Superior Court for the right of visitation with any minor child. Such petition shall include specific and good-faith allegations that (1) a parent-like relationship exists between the person and the minor child, and (2) denial of visitation would cause real and significant harm. Subject

to subsection (e) of this section, the court shall grant the right of visitation with any minor child to any person if the court finds after hearing and by clear and convincing evidence that a parent-like relationship exists between the person and the minor child and denial of visitation would cause real and significant harm."

[3] Section 46b-57 "assigns the court discretionary power to permit intervention upon motion by any interested third party or parties. . . . A prerequisite to that intervention, however, is the existence of a controversy. . . . Intervention is a device which enables one who was not originally a party to an action to become such a party on his own initiative. . . . The intervenor's posture is derivative; he assumes his role only by virtue of an action already shaped by the original parties. He must, therefore, take his controversy as he finds it and may not use his own claims to restyle or resuscitate their action." (Citation omitted; footnote omitted; internal quotation marks omitted). *Manter* v. *Manter*, 185 Conn. 502, 505–506, 441 A.2d 146 (1981). In the present case, the appellant filed his motion to intervene after the plaintiff and defendant reached an agreement that specifically addressed custody. It appears that there was no controversy for the appellant to insert himself into. Nevertheless, when reviewing the timeliness of an intervention as it relates to the status of the original parties' dispute, the standard of review is abuse of discretion. See id., 507. Furthermore, the court did not make a determination on the timeliness of the motion, and, therefore, in light of our conclusion that the court lacked jurisdiction to consider the appellant's motion, we need not consider whether a controversy existed when the appellant filed his motion to intervene.

[4] The fact that the court engaged in a custody analysis was likely due, at least in part, to what the appellant set forth in his motion to intervene. As previously noted, the appellant's motion focused solely on the past conduct of the defendant. Although the motion cited to § 46b-59, the third party visitation statute, the motion made no further reference to visitation. In fact, the motion's request for relief did not mention visitation; instead, it sought nullification of the parties' parenting access agreement, sanctions against the defendant and his counsel, and an order requiring the defendant to undergo psychiatric treatment.

[5] Section 46b-59 was amended in 2012 to essentially codify the judicial gloss the Supreme Court put on the then existing version of § 46b-59 in *Roth*. In *Roth*, the court concluded that, without the proper gloss, § 46b-59, as enacted at that time, would be subject to application in a manner that would be unconstitutional. *Roth* v. *Weston*, supra, 259 Conn. 233–34. The court concluded that implicit in the statute was a rebuttable presumption that visitation that is opposed by a fit parent is not in the child's best interests. Id., 234. Additionally, the court concluded that in order to avoid constitutional infirmity, a petition for visitation must include specific, good faith allegations both that the petitioner has a parent-like relationship with the child and that the denial of visitation would cause real and significant harm to the child. Id., 234–35.

[6] We note that the § 46b-59 (b) also requires that the petition be verified. The appellant's petition was not verified. This failure alone would also require dismissal of the appellant's petition.

[7] Under § 46b-120 (4), "[a] child may be found 'neglected' who, for reasons other than being impoverished, (A) has been abandoned, (B) is being denied proper care and attention, physically, educationally, emotionally or morally, or (C) is being permitted to live under conditions, circumstances or associations injurious to the well-being of the child." Under § 46b-120 (6), "[a] child may be found 'uncared for' (A) who is homeless, (B) whose home cannot provide the specialized care that the physical, emotional or mental condition of the child requires, or (C) who has been identified as a victim of trafficking, as defined in [General Statutes §] 46a-170."