******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RICHARD ROMEO ET AL. *v.* FERNNE BAZOW
(AC 42200)

Alvord, Prescott and Sullivan, Js.

*Syllabus*

The plaintiffs appealed to this court from the judgment of the trial court dismissing for lack of subject matter jurisdiction their third-party petition for visitation as to the minor children of the defendant. On their petition, the plaintiffs checked the boxes stating that they have a relationship with the children that is parent-like and that denial of visitation will cause real and significant harm to the children, and they referenced an attached affidavit. In the attached affidavit, the plaintiffs averred that they are the children's maternal grandparents, and they detailed their involvement with the children. They also averred that the defendant was preventing them from having any relationship with the children because she was angry with the plaintiffs and that, in doing so, the children were being harmed by deracinating them from their extended family and family roots. The defendant moved to dismiss the petition for lack of subject matter jurisdiction on the ground that the plaintiffs failed to plead the necessary factual allegations to satisfy the second jurisdictional prerequisite set forth in *Roth* v. *Weston* (259 Conn. 202), specifically, that the denial of visitation will cause real and significant harm to the children. Thereafter, the plaintiffs filed an expert witness disclosure, in which they indicated that a clinical and forensic psychologist would testify as to the real and significant harm that would result from the sudden exclusion of the plaintiffs from the children's lives. Following a hearing, the trial court granted the defendant's motion to dismiss and rendered judgment thereon, determining, inter alia, that the plaintiffs' petition failed to satisfy the second jurisdictional element set forth in *Roth. Held*:

1. The trial court properly limited its consideration to the allegations contained in the plaintiffs' petition and the attached affidavit in ruling on the defendant's motion to dismiss; contrary to the plaintiffs' claim that that court improperly failed to consider their expert witness disclosure, our case law instructs that it would have been inappropriate for the court to look beyond the petition and accompanying affidavit to the expert disclosure, as the court was required to scrutinize the petition to determine whether it contained specific, good faith allegations of harm, and the expert disclosure, which was not attached to the petition and was not filed until months after the parties' briefing on the motion to dismiss was complete, constituted an attempt to supplement the petition with additional allegations in an effort to satisfy the second jurisdictional element set forth in *Roth*.

2. The trial court properly dismissed the plaintiffs' petition for lack of subject matter jurisdiction, the plaintiffs having failed to plead the requisite level of harm under the second jurisdictional element set forth in *Roth*; the only allegations as to harm in the plaintiffs' petition and accompanying affidavit were general allegations that neither rose to the level of neglect, abuse or abandonment contemplated by *Roth*, nor specified the type of harm that the children would suffer if the plaintiffs were denied visitation with them.

Argued October 10, 2019—officially released January 21, 2020

*Procedural History*

Petition for visitation with the defendant's minor children, brought to the Superior Court in the judicial district of Hartford, where the court, *Margaret M. Murphy, J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed.*

*John F. Morris*, for the appellants (plaintiffs).

*Steven R. Dembo*, with who were *Caitlin E. Kozloski* and, on the brief, *P. Jo Anne Burgh*, for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiffs, Richard Romeo and Nancy Romeo, appeal from the judgment of the trial court dismissing their third-party petition for visitation brought pursuant to General Statutes § 46b-59 and Practice Book § 25-4 as to the minor children of the defendant, Fernne Bazow. On appeal, the plaintiffs claim that the court improperly dismissed their petition on the basis that it failed to satisfy the jurisdictional pleading requirements set forth in *Roth* v. *Weston*, 259 Conn. 202, 789 A.2d 431 (2002). We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On January 8, 2018, the plaintiffs filed a third-party petition for visitation seeking visitation with the defendant's two minor children.[1] The plaintiffs checked the box on the petition stating that they "have a relationship with the child(ren) that is parent-like." In the space below, the plaintiffs wrote: "See attached Affidavit." The plaintiffs also checked the box stating that "[d]enial of visitation will cause real and significant harm to the child(ren)" and again referenced the attached affidavit.[2]

In the attached affidavit, the plaintiffs averred that they are the maternal grandparents of the children and that they "have had a long-standing involvement with [their] grandchildren that has been so active, involved, and regular as to be the same as a parent-child relationship." They averred that they had lived with the children for the children's entire lives and had taught them hygiene, safety, respect, and morality, among other basic necessities of life. They averred that Richard Romeo had been the only consistent male role model the children have had. They averred that the defendant was upset with them because they had recently advocated for the defendant's daughter to have a relationship with her estranged father and that the defendant had retaliated against the plaintiffs by moving out of their home and restricting their access to the children.

The plaintiffs' affidavit contained twenty-three paragraphs detailing their involvement with the children, including providing childcare, both during their infancy "on a daily and often over-night basis," and during their preteen years to enable the defendant to maintain employment. They averred that they provided clothing, shoes and shelter for the children, taught them life skills, took them on vacations, did homework with them, and facilitated their involvement in sports activities. As to Nancy Romeo, they averred that she "became the custodian" for the children when she retired in 2013, at which time she became responsible for "getting them up in the morning, getting them breakfast, making sure homework was done, and taking them to and picking them up from school, after school activities, supper and

putting them to bed." The plaintiffs averred that the defendant's daughter has asthma, and that "many times [they] were the ones doing asthma treatment with her, bringing her to the doctor, and on occasion to the hospital." The plaintiffs averred that they strongly feel that "it is in [the] children's best interests to maintain a consistent and ongoing relationship" with them.

The plaintiffs further averred: "We are gravely concerned that [the defendant] is preventing us from seeing [the] children because she is angry with us over our support of [her daughter's] paternal relationship. [Her daughter] is now [fourteen], and needs to know who her father is, and have a relationship with him. Since mid-2017, [the defendant] has been removing the children from any relationship with us and extended family members. It is so hurtful that [the defendant] would try to prevent the children from having relationships with their family members. Our extended family and friends saw the children on a nearly weekly basis since they were very little, and now [the defendant] is restricting all such access. There can be no greater harm to a child than the neglecting to promote and foster a child's roots in family [and] friends which directly affect the child's emotional growth and moral compass. The harm to the children, by deracinating their family roots is real and significant because it undermines a substantial part of who they are."

The plaintiffs sought visitation with the children "one weekend per month from Friday after school until Sunday night at dinnertime, one mid-week overnight every other week, summer vacation time, and regular telephone or FaceTime access."

On January 31, 2018, the defendant filed a motion to dismiss the petition on the basis that the plaintiffs lacked standing and, therefore, that the court lacked subject matter jurisdiction. In her memorandum of law in support of her motion to dismiss, the defendant argued that the plaintiffs had failed to plead the factual allegations necessary to provide the court with jurisdiction. Specifically, she argued that the petition failed to satisfy the second element of the two part test for standing established by our Supreme Court in *Roth* v. *Weston*, supra, 259 Conn. 235, in that the petition lacked specific, good faith allegations that denial of the visitation will cause real and significant harm to the children. She argued that the only allegation of harm contained in the petition did not specifically identify the type of harm and spoke "to some hypothetical child or children and not even the defendant's children . . . ." She further argued that there were no allegations that "would be of such magnitude such as to allow the state to assume custody under [General Statutes §§] 46b-120 and 46b-129."

On February 16, 2018, the plaintiffs filed an objection to the motion to dismiss, in which they argued that the

defendant's claims were not the proper subject of a motion to dismiss. They maintained that "[t]he defendant's claim that the allegations in the affidavit do not rise to the level of 'parent-like relationship' and/or that the denial will not cause 'real and significant harm' are appropriately subjects of a hearing on the merits of the petition, where the claims of both parties can be weighted, considered and decided." The defendant filed a reply to the plaintiffs' objection on March 8, 2018.

On June 6, 2018, the plaintiffs filed an expert witness disclosure, in which they indicated that Sidney Horowitz, a clinical and forensic psychologist, was expected to testify as to "the real and significant harm caused to the minor children by the defendant's sudden exclusion of the plaintiffs from the children's lives after years of substantial and regular involvement."[3] The disclosure was refiled on September 7, 2018. On September 25, 2018, the defendant filed a motion in limine seeking to preclude the plaintiffs from presenting expert testimony during the hearing on the defendant's motion to dismiss. The defendant argued therein that the proper inquiry for the court was whether the petition, as pleaded, was sufficient to afford the court jurisdiction and that the plaintiffs should not be permitted to supplement their allegations through expert testimony.

The parties appeared before the court, *Margaret M. Murphy, J.*, on September 26, 2018. The defendant's counsel represented that the parties had met that morning with Judge Olear, who had denied the plaintiffs' request for a continuance based on the filing of the motion in limine. According to the defendant's counsel, Judge Olear had stated that the matter was going forward because "there was no ability to have third parties."[4] The defendant's counsel accordingly restricted his argument before Judge Murphy to the motion to dismiss, and the plaintiffs' counsel did not thereafter reference the expert disclosure. At the conclusion of argument, the court stated that it needed to decide the subject matter jurisdiction issue before proceeding and that it would issue a decision shortly.

On October 5, 2018, the court issued a memorandum of decision in which it granted the defendant's motion to dismiss the petition on the basis that the plaintiffs lacked standing because their petition failed to include the jurisdictional elements required by *Roth*. As to the first element, the court found that, although "the petition asserts daily interactions and contact, cohabitation alone does not establish the requisite parent-like relationship." With respect to the allegations of activities that the plaintiffs facilitated with the children, the court found that such interactions did not suffice to meet the jurisdictional threshold.[5] As to the second element, the court found that the petition contained no specific allegations of real and significant harm to the children from the lack of visitation. Specifically, the court found that

the plaintiffs' allegations evidenced a disagreement with certain parenting decisions made by the defendant but that the plaintiffs did not allege that the defendant is unfit or that the children are neglected. The court stated: "The grandchildren may miss regular contact with their grandparents, although this fact is not alleged. But even if, for argument's sake, the grandchildren miss their grandparents or the defendant has made parenting mistakes, this type of harm alone does not rise to the level of neglect or uncared for as contemplated by *Roth* or as defined in . . . § 46b-59." Accordingly, the court granted the defendant's motion to dismiss the petition. This appeal followed.

On appeal, the plaintiffs claim that the court erred in dismissing the petition and in failing to consider the plaintiffs' expert witness disclosure. We disagree.

We first set forth our standard of review. "The standard of review of a motion to dismiss is . . . well established. In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . Because a challenge to the jurisdiction of the court presents a question of law, our review of the court's legal conclusion is plenary. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Internal quotation marks omitted.) *Fuller* v. *Baldino*, 176 Conn. App. 451, 456–57, 168 A.3d 665 (2017).

We next set forth applicable legal principles. In *Roth* v. *Weston*, supra, 259 Conn. 228, our Supreme Court recognized that the "constitutionally protected interest of parents to raise their children without interference undeniably warrants deference and, absent a powerful countervailing interest, protection of the greatest possible magnitude." To safeguard parents' rights against unwarranted intrusions into their authority, the court set forth "two requirements that must be satisfied in order for a court: (1) to have jurisdiction over a petition for visitation contrary to the wishes of a fit parent; and (2) to grant such a petition." Id., 234.

"First, the petition must contain specific, good faith allegations that the petitioner has a relationship with the child that is similar in nature to a parent-child relationship. The petition must also contain specific, good faith allegations that denial of the visitation will cause real and significant harm to the child. As we have stated, that degree of harm requires more than a determination that visitation would be in the child's best interest. It must be a degree of harm analogous to the kind of harm

contemplated by §§ 46b-120 and 46b-129, namely, that the child is 'neglected, uncared-for or dependent.' The degree of specificity of the allegations must be sufficient to justify requiring the fit parent to subject his or her parental judgment to unwanted litigation. Only if these specific, good faith allegations are made will a court have jurisdiction over the petition." Id., 234–35.

"Second, once these high jurisdictional hurdles have been overcome, the petitioner must prove these allegations by clear and convincing evidence. Only if that enhanced burden of persuasion has been met may the court enter an order of visitation." Id., 235.

Following *Roth*, this court has described the procedure to be followed by the trial court when faced with a motion to dismiss a petition for visitation on the basis that it fails to allege the jurisdictional elements set forth in *Roth*. Specifically, "the trial court is required . . . to scrutinize the [petition] and to determine whether it contains specific, good faith allegations of both relationship and harm. . . . If the [petition] does not contain such allegations, the court lacks subject matter jurisdiction and the [petition] must be dismissed." (Citations omitted; footnote omitted.) *Fennelly* v. *Norton*, 103 Conn. App. 125, 142, 931 A.2d 269, cert. denied, 284 Conn. 918, 931 A.2d 936 (2007); see *Fuller* v. *Baldino*, supra, 176 Conn. App. 460–61 (court properly dismissed third-party petition for lack of subject matter jurisdiction where petition failed to allege second jurisdictional element set forth in *Roth*); *Warner* v. *Bicknell*, 126 Conn. App. 588, 593, 12 A.3d 1042 (2011) ("[o]ur case law is clear that, absent the allegations identified by the *Roth* court, the court must dismiss a third party's [petition] for visitation"); see also *Firstenberg* v. *Madigan*, 188 Conn. App. 724, 736, 205 A.3d 716 (2019) (court lacked subject matter jurisdiction over petition that lacked necessary allegations).

In the present case, the plaintiffs argue that the court improperly declined to consider their expert disclosure when ruling on the defendant's motion to dismiss their petition. They maintain that the disclosure was part of the record available to the court when considering whether the *Roth* standards were satisfied and that the disclosure specifically "address[ed] the harm issue in addition to their affidavit." As noted previously, it is not clear from our scrutiny of the record that the plaintiffs requested that Judge Murphy consider the expert disclosure because, prior to oral argument before Judge Murphy, Judge Olear had stated, as represented by the defendant's counsel, that no "third parties" could present testimony. Even if the plaintiffs had made such a request, we conclude that the court properly limited its consideration to the allegations contained in the plaintiffs' petition, including the attached affidavit.[6]

When the issue raised in a motion to dismiss is the plaintiff's failure to comply with the *Roth* requirements

in a third-party petition for visitation, *Roth* instructs that the court simply should "examine the allegations of the petition and compare them to the jurisdictional requirements set forth herein." *Roth* v. *Weston*, supra, 259 Conn. 235. In *Fennelly* v. *Norton*, supra, 103 Conn. App. 134–36, 138, this court considered whether the trial court, after a motion to dismiss had been filed, properly conducted an evidentiary hearing, at which the plaintiffs concededly attempted to establish the threshold requirements of *Roth*. On appeal, this court concluded that, "[b]ecause the defendant's motion to dismiss for lack of jurisdiction was predicated on the insufficiency of the [petition] for visitation, it was inappropriate for the court to look beyond that pleading and permit the plaintiffs to augment the [petition] with additional allegations at the evidentiary hearing." Id., 139.

The defendant in the present case filed a motion to dismiss the petition and a memorandum of law in support, in which she argued that the petition was deficient because the allegations failed to satisfy the *Roth* requirements. In ruling on the motion to dismiss, the court was required to scrutinize the petition to determine whether it contained specific, good faith allegations of both relationship and harm. The court properly conducted this analysis. The plaintiffs' expert disclosure, which was not attached to the petition and was not filed until months after the parties' briefing on the motion to dismiss was complete, constituted an attempt to supplement the plaintiffs' petition with additional allegations in an effort to satisfy the second jurisdictional element set forth in *Roth*. Thus, it was not improper for the court to limit its consideration to the allegations of the petition and accompanying affidavit. Indeed, our case law instructs that it would have been inappropriate for the court to look beyond that pleading to the expert disclosure.[7]

Having concluded that the court properly limited its consideration to the allegations of the petition and the attached affidavit, we turn to the plaintiffs' claim that the court improperly determined that the petition failed to satisfy the *Roth* requirements. We conclude that the court properly determined that the plaintiffs failed to plead the requisite level of harm under the second element of the *Roth* requirements.[8]

As stated previously, the second element of the *Roth* test requires that the petition "contain specific, good faith allegations that denial of the visitation will cause real and significant harm to the child. . . . [T]hat degree of harm requires more than a determination that visitation would be in the child's best interest. It must be a degree of harm analogous to the kind of harm contemplated by §§ 46b-120 and 46b-129, namely, that the child is 'neglected, uncared-for or dependent.' "[9] *Roth* v. *Weston*, supra, 259 Conn. 235; see also *Firstenb-*

*erg* v. *Madigan*, supra, 188 Conn. App. 735 ("[t]he statute is clear and unambiguous that a petition for visitation must make specific, good faith allegations that the minor child will suffer real and significant harm akin to neglect if visitation were denied").

In *Roth*, our Supreme Court stated: "[I]t is unquestionable that in the face of allegations that parents are unfit, the state may intrude upon a family's integrity. . . . Therefore, it is clear that a requirement of an allegation such as abuse, neglect or abandonment would provide proper safeguards to prevent families from defending against unwarranted intrusions and would be tailored narrowly to protect the interest at stake." (Citations omitted.) *Roth* v. *Weston*, supra, 259 Conn. 224. The court described as the "more difficult issue . . . whether the child's own complementary interest in preserving relationships that serve his or her welfare and protection can also constitute a compelling interest that warrants intruding upon the fundamental rights of parents to rear their children." Id., 225. The court stated: "We can envision circumstances in which a nonparent and a child have developed such substantial emotional ties that the denial of visitation could cause serious and immediate harm to that child. For instance, when a person has acted in a parental-type capacity for an extended period of time, becoming an integral part of the child's regular routine, that child could suffer serious harm should contact with that person be denied or so limited as to seriously disrupt that relationship. Thus, proof of a close and substantial relationship and proof of real and significant harm should visitation be denied are, in effect, two sides of the same coin. Without having established substantial, emotional ties to the child, a petitioning party could never prove that serious harm would result to the child should visitation be denied. This is as opposed to the situation in which visitation with a third party would be in the best interests of the child or would be very beneficial. The level of harm that would result from denial of visitation in such a situation is not of the magnitude that constitutionally could justify overruling a fit parent's visitation decision. Indeed, the only level of emotional harm that could justify court intervention is one that is akin to the level of harm that would allow the state to assume custody under . . . §§ 46b-120 and 46b-129—namely, that the child is 'neglected, uncared-for or dependent' as those terms have been defined." Id., 225–26.

Recently, in *Fuller* v. *Baldino*, supra, 176 Conn. App. 459, this court concluded that allegations that the plaintiff has a "very strong bond" with the child and that the child "suffers" and "is very emotional" when unable to see him did not rise to the level of neglect, abuse or abandonment. This court further concluded that the allegations failed to specify what harm the child will suffer if he is denied visitation and that the petition, instead, asked the court "to infer neglect, lack of care,

or abandonment from his allegation that the child will 'suffer' as a consequence of the termination of their relationship." Id., 460. Accordingly, the allegations were insufficient under *Roth* to establish subject matter jurisdiction. Id. The court in *Fuller* relied on *Clements* v. *Jones*, 71 Conn. App. 688, 695, 803 A.2d 378 (2002), in which this court considered the plaintiff's allegations that she "often received the child in an ill state, apparently due to the child's asthma, and needed to nurse him back to health, that the plaintiff spent much time nursing the child back to health, that separation would be unjust and inhumane to the child, and that visitation would be in the best interest of the child." With respect to the allegations regarding the child's health, without more, this court could not conclude that they "constitute an allegation that rises to the level of abuse, neglect, or abandonment contemplated by *Roth*." Id., 695–96. This court further concluded that "[t]he other assertions also do not allege the requisite level of harm necessary to satisfy the harm test set out in *Roth*." Id., 696; see also *Firstenberg* v. *Madigan*, supra, 188 Conn. App. 735 (court lacked jurisdiction over third-party petition for visitation, where petition "made several unsubstantiated allegations" about defendant and his attorney, none of which addressed type of real and substantial harm contemplated by §§ 46b-59 and 46b-120, or referenced type of harm child would experience if visitation were denied).

In the present case, the only allegations as to harm in the plaintiffs' petition and accompanying affidavit are the following: "There can be no greater harm to a child than the neglecting to promote and foster a child's roots in family [and] friends which directly affect the child's emotional growth and moral compass. The harm to the children, by deracinating their family roots is real and significant because it undermines a substantial part of who they are." These general allegations neither rise to the level of neglect, abuse or abandonment, nor specify the type of harm the children will suffer if the plaintiffs are denied visitation. Accordingly, we agree with the trial court that the plaintiffs' petition failed to allege the second jurisdictional element set forth in *Roth*, and the court properly dismissed the petition for lack of subject matter jurisdiction.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Nancy Romeo is the defendant's mother, and Richard Romeo is the defendant's stepfather.

[2] The petition was signed by Richard Romeo only and was not sworn to before a clerk, notary public, or commissioner of the Superior Court. The attached affidavit, executed the same day as the petition, was signed by both Richard Romeo and Nancy Romeo and sworn to before a commissioner of the Superior Court. At oral argument before this court, the defendant argued that this deficiency alone would require dismissal of the petition, citing *Firstenberg* v. *Madigan*, 188 Conn. App. 724, 731 n.6, 205 A.3d 716 (2019). In that case, this court noted that the appellant's failure to verify the petition, as required by § 46b-59 (b), alone would require dismissal of the petition. Id. In the present case, the trial court did not address this

discrepancy in its memorandum of decision, and the defendant did not analyze the issue in her appellate brief as an alternative ground to affirm the judgment. Moreover, because we conclude that the court properly dismissed the petition on the basis that it failed to satisfy the second element of the *Roth* standard, we need not resolve whether an absent or inconsistent verification provides an additional and independent basis for dismissal of the petition.

[3] The plaintiffs' disclosure indicated that Horowitz was expected to opine, inter alia, that "the [plaintiffs] have had a reciprocal parent-like relationship with the minor children that has resulted in a psychological bonding between them . . . [t]hat sudden rupture of the relationship by unilateral action of the defendant, without cause, is reasonably likely to cause traumatogenic consequences for the children . . . [and] [t]hat there is a reasonable psychological probability that the defendant's intentional rupture of the relationship, and traumatogenic harms can substantially [a]ffect the children's emotional and psychological development resulting in real and substantial harm."

[4] The court file does not indicate that a ruling was issued on the motion in limine.

[5] The court also found that the defendant's termination of regular contact between the plaintiffs and the children in mid-2017 "precludes a finding of a present parent-like relationship . . . ." On appeal, the plaintiffs argue that the court applied the wrong standard of law, in that it deviated from the *Roth* standard "by introducing a requirement of a 'present' parent-like standard that is not found in the statute or the case law." We need not address this argument, as we conclude that the court properly dismissed the petition on the basis that it failed to satisfy the second element of the *Roth* standard. See *Fennelly* v. *Norton*, 103 Conn. App. 125, 142, 931 A.2d 269 (petition must contain "specific, good faith allegations of *both* relationship and harm" [emphasis added]), cert. denied, 284 Conn. 918, 931 A.2d 936 (2007).

[6] The defendant passingly argues in her appellate brief that the court should not have considered the allegations contained in the plaintiffs' affidavit, which was attached to and referenced in the plaintiffs' petition. We need not address this issue because the facts alleged in the affidavit, even if considered, are insufficient to satisfy *Roth*.

[7] We further note that, in light of the requirement in § 46b-59 (b) that third-party petitions for visitation be verified, it would be particularly inappropriate for the court to consider representations contained in an expert disclosure, which our rules of practice do not require to be verified. See Practice Book § 13-4. Indeed, the purpose of our rule of practice requiring expert disclosure merely is "to assist the defendant in the preparation of his case, and to eliminate unfair surprise by furnishing the defendant with the essential elements of a plaintiff's claim." *Wexler* v. *DeMaio*, 280 Conn. 168, 188, 905 A.2d 1196 (2006).

[8] Accordingly, we need not address the plaintiffs' argument that the court improperly determined that they failed to allege the first *Roth* requirement. See footnote 5 of this opinion.

[9] General Statutes § 46b-59 (a) (2) defines real and significant harm to mean "that the minor child is neglected, as defined in section 46b-120, or uncared for, as defined in said section."

General Statutes § 46b-120 (4) provides in relevant part that "[a] child may be found 'neglected' who, for reasons other than being impoverished, (A) has been abandoned, (B) is being denied proper care and attention, physically, educationally, emotionally or morally, or (C) is being permitted to live under conditions, circumstances or associations injurious to the well-being of the child . . . ."

General Statutes § 46b-120 (6) provides in relevant part that "[a] child may be found 'uncared for' (A) who is homeless, (B) whose home cannot provide the specialized care that the physical, emotional or mental condition of the child requires, or (C) who has been identified as a victim of trafficking, as defined in section 46a-170. . . ."

[10] In their appellate brief, the plaintiffs rely on *DiGiovanna* v. *St. George*, 300 Conn. 59, 12 A.3d 900 (2011), for a number of general legal propositions. In that case, the issue on appeal was whether a trial court may deny a nonparent's petition for visitation when the applicant has proven by clear and convincing evidence that he has a parent-like relationship with the child and that the child would suffer harm akin to abuse and neglect if the relationship is not permitted to continue, if the trial court concludes that visitation nonetheless is not in the best interest of the child. Id., 61. In resolving that question, the court noted that it was "treat[ing] as uncontested the trial court's findings that the plaintiff alleged and proved the *Roth* factors

by clear and convincing evidence." Id., 70. Thus, *DiGiovanna* primarily addressed the implementation of visitation *following* the third party's pleading and proving the requisite *Roth* elements of the parent-like relationship and substantial harm akin to abuse or neglect if visitation were denied. Accordingly, it does not assist this court in its analysis as to whether the jurisdiction elements were alleged in the present case.

We recognize, however, as the plaintiffs emphasize, that our Supreme Court in *DiGiovanna* noted that "because the requisite harm for obtaining visitation over a fit parent's objection is akin to, but falls short of, the neglected, uncared-for or dependent standard for intervention by the [Department of Children and Families], parents unsuccessfully may oppose visitation without necessarily being unfit or in need of such intervention." Id., 73. Because the plaintiffs' allegations fall considerably short of the requisite harm akin to neglect, we fail to see how this principle is of any assistance to the plaintiffs.

———————————————